Gates *v.* Labeaume.

GATES, Respondent, *vs.* LABEAUME & THOMPSON, Appellants.

1. A provision in a deed of assignment for the benefit of creditors that the assignees should pay the surplus, if any, after paying all the debts *exclusive of costs,* to the assignor, will not render the assignment void.

2. A deed of assignment under the law of 1845, is *prima facie* evidence that the persons therein named as creditors are in fact such, upon the trial of an issue between the plaintiffs in an attachment and the assignee summoned as garnishee.

3. A deed of assignment for the benefit of creditors is for a valuable consideration in the highest sense of the words.

4. *It would seem* that the fraud of the assignors in a deed of assignment under the statute, (R. C. 1845,) will not render the assignees liable to the process of garnishment on attachment, unless they are parties or privies to the fraud.

5. A deed of assignment valid in its creation will not be vitiated by any subsequent fraudulent or illegal acts of the assignor.

6. To render a deed of assignment fraudulent upon the ground of an intent to hinder or delay creditors, there must be an intent to hinder and delay actually entertained by the debtor; it is not sufficient that such is the effect of the assignment.

*Appeal from St. Louis Court of Common Pleas.*

The appellants were summoned in an attachment suit as the garnishees of one Claverdetscher. The plaintiff filed allegations stating that the garnishees had in their hands goods and chattels belonging to and delivered to them by Claverdetscher; also that they were indebted to Claverdetscher.

The garnishees answered, admitting that they were assignees of Claverdetscher and had taken his goods assigned, and disposed of them according to the deed under the order of the Circuit Court, having first made an inventory and appraisement, and that they held the proceeds. They filed a copy of the deed

with their answer. It is in the common form of an assignment for creditors, among whom Gates, the plaintiff, is named in the deed. They deny having any effects of Claverdetscher, except under said assignment.

The plaintiff filed a traverse, stating that said deed of assignment was a fraudulent contrivance on the part of Claverdetscher to delay and defeat his creditors, and that one of the garnishees was privy to the fraud.

The case was tried by the court in the absence of the garnishees, and the court gave judgment for the plaintiff, reciting that the garnishees *were indebted to Claverdetscher*.

The decision in writing states that the assignment was made to defraud creditors ; that only a part of Clavedetscher's goods were assigned, and the residue were about to be fraudulently removed ; that there was no evidence that the preferred creditors named in the assignment were real creditors of Claverdetscher.

The garnishees moved for a review, and made a case which contained all the evidence adduced by the plaintiff on trial. The evidence was the deed of assignment which appeared to have been duly executed and recorded ; and testimony to the effect that the assignment was made pending judgments against Claverdetscher, and very soon after Claverdetscher's agent, one of the assignees, had assured one of the judgment creditors that Claverdetscher was solvent and that he would be paid ; also that just after the assignment Claverdetscher's wife secretly shipped some of his goods to be carried to Cincinnati.

The points made on the case were these : 1. There was no charge of fraud in the allegations, and the evidence in that respect was immaterial. 2. The assignment was not in fact fraudulent. 3. There was no notice of any fraud to the garnishees. 4. The assignment was valid. 5. The deed of assignment was evidence that the persons therein named as creditors were creditors.

The court below denied the motion for review. The garnishees appealed.

*R. M. Field*, for appellants.   I. Under the circumstances relied on by the plaintiff, the appellants were not liable to the process of garnishment.   In *Van Winkle* v. *McKee*, 7 Mo. Rep. 435, it was held that an assignee, for the benefit of creditors, could not be holden as a garnishee on execution, because he was not a debtor, and for the further reason that it would be highly inconvenient to settle the rights to the fund in such proceeding.   In *Lee* v. *Tabor*, 8 Mo. 322, which was an attachment case, the court said that the case was certainly embraced by the reasoning of the court in *Van Winkle* v. *McKee*, but in deference to the legislature, which, in respect to attachments, had used language too explicit to admit of construction, the proceeding by garnishment was allowed.   This was in 1843.   Since this last case arose, important changes on the subject have been made in the statute law.   1. The legislature has passed an act regulating the proceedings under assignments.   The assignee is required to give bond, file inventories, act under the orders of the circuit court and render his account to the same court.   This statute brings the assignee within the reason of the decisions of this court, exempting sheriffs and administrators, from the process of garnishment.   *Marvin* v. *Hawley*, 9 Mo. Rep. 382.   *Curling* v. *Hyde*, 10 Mo. Rep. 374.   2. In 1847 the legislature passed an act reducing the proceeding of garnishment on attachments to the level of that on executions.   Acts of 1847, p. 9. §3 provides that " where a plaintiff shall file his interrogatories to the garnishee, he shall also file a plain and distinct statement of the grounds on which he requires the garnishee to answer, and the garnishee may then *plead and defend as he might do, if he was sued for the same cause by the defendant in the action.*"

The matter appearing on the answer and evidence in this case was, undoubtedly, a perfect defence to any claim by Claverdetscher, the defendant; and by force of the statute just quoted, it was equally as good a defence against the plaintiff.   II. The allegations in this case were an evasion of

the act of 1847. No fraud in the assignment was alleged. A replication was resorted to to bring out the grounds of the plaintiff's claim. The attachment act of 1845, § 32, authorizes a *denial* of the garnishee's answer. But in the present case there was no denial. The plaintiff confessed the answer and undertook to, avoid it by new matter. The new matter thus improperly brought before the court ought to have been disregarded on the trial. III. There was no competent evidence of any fraud on the part of Claverdetscher in making the assignment. The only evidence relied on was to the effect that his wife had secretly disposed of some goods included in the assignment and at a time subsequent to the assignment. The transactions were not proved to have any connection. IV. Even if Claverdetscher were chargeable with fraud in the assignment, no privity or notice is imputable to the assignees. It is conceived that without such privity or notice the assignees were not chargeable. V. The deed of assignment was competent, and, in the absence of other testimony, sufficient evidence that the persons named in the deed as creditors were creditors in fact. The other side seems to rely on two cases in 5 Mo., *Hughes* v. *Ellison*, 463, and *Crow* v. *Ruby*, 485. These cases do not seem to have been well considered by the court, and they were disapproved of by Judge Napton, in *Brown* v. *Knox*, 6 Mo. 302. At all events it is conceived that they have ceased to be applicable, since our statute law of assignments has required all creditors to prove their debts before they can claim any benefit under the assignment.

*Knox & Kellogg*, for respondent. 1. The deed is fraudulent on the face of it. It provides, that no costs that may be incurred in prosecuting demands against Claverdetscher, shall be paid by said assignees, and provides for the payment of any surplus, after satisfying all the claims specified in the deed, exclusive of costs. If this clause does not wholly vitiate the deed, it is evidence of a fraudulent intent. 2. There was no evidence offered tending to prove that the persons named in the first class of preferred creditors, had any *bona fide* demands

against said Claverdetscher, or that he was in any wise indebted to them, nor was there any evidence tending to prove the assent of any of the creditors to said assignment. 5 Mo. Rep. 241. 5 ib. 463. 5 ib. 489. 17 Mass. 454. 13 Mass. 146. 3. There is positive evidence that the deed of assignment was made for the purpose of defrauding creditors. While the deed professes to convey and assign all the assignee's property, the evidence shows that the assignor, subsequent to the assignment, endeavored to remove a portion of the goods out of the state of Missouri, and this, too, with the knowledge of the assignee, Thompson. Burrell on Assignments, 391-2, 384, 168–9, 170,–1–2–3–9, 235. 2 Comst. 365.

RYLAND, Judge, delivered the opinion of the court.

It becomes necessary for this court to consider but the two main questions arising in this case. Is the deed of assignment from Claverdetscher to Labeaume & Thompson void on its face? If not, do the facts in proof render it void? We shall not say any thing in regard to the right of the plaintiff to garnishee the assignees. We shall not say in what light such assignees are to be considered; whether as *quasi* public officers, against whom the process of garnishment cannot be maintained or not. Taking all such steps as lawfully done in this case, we shall notice the two main questions above.

1. First, is the deed of assignment upon its face void? This we answer in the negative. There is no provision in it which, in our opinion, renders it void. The deed is in the usual form; it has its preferred creditors, or rather, classes, requiring the debts of the first class to be first paid, and so on. Said deed of assignment is as follows:

" This indenture, made this tenth day of February, in the year of our Lord, one thousand eight hundred and fifty-two, between Lucien Claverdetscher, of the first part, and W. Broadus Thompson and Theodore Labeaume of the second part, all of the city and county of St. Louis, and state of

Missouri : Whereas, the said party of the first part, is indebted to various persons, whose names are hereinafter mentioned, with the amount due each attached to the same ; and, whereas, he is unable to provide money promptly and at maturity for all his obligations and indebtedness, but is desirous of applying thereto all his property of every kind and description : Now, therefore, this indenture witnesseth, that said party of the first part, for and in consideration of the premises, and of the sum of one dollar unto him in hand paid by the said parties of the second part, at or before the sealing and delivering of these presents, the receipt whereof is hereby acknowledged, has granted, bargained and sold, assigned, transferred and set over, and does hereby grant, bargain and sell, assign, transfer and set over to the said parties of the second part, all the property of the said party of the first part, of every kind and description, consisting of goods, wares and merchandise, books, notes and accounts, contained in the store house now occupied by the party of the first part, in Glasgow Row, now No. 122, on Fourth street, in the city of St. Louis, in the state of Missouri.

" To have and to hold the said property to the said parties of the second part, in trust for the following uses and purposes hereinafter directed, and none other, that is to say, the parties of the second part shall take possession of the said goods, wares and merchandise, and dispose of the same according to law, and shall also collect all said notes and accounts due said party of the first part, (all of which is to be done under the provisions of the act of assembly, in such cases made and provided,) and out of the proceeds of such sales and collections, they shall pay, first, the expenses of drawing and executing this instrument, and of carrying out the purposes of this trust.

" Secondly, they shall pay and discharge a debt of two thousand five hundred dollars ($2,500) with six per cent. from the 17th day of July, 1849, due Christian Burkhardt, of Cincinnati, Ohio, by note of party of first part, of 17th July, 1849, for money loaned.

" Also a debt of seven hundred and fifty dollars, with six per cent. from 18th July, 1851, due to John Akley, of St. Louis, by note of party of first part, dated 18th July, 1851, for money loaned ; and also a debt of three hundred dollars to Miss Mary Webb, which party of first part owes her for services as saleswoman in his store.

" And after said parties of the second part shall have paid and discharged the above recited debts in full, they shall proceed, thirdly, to pay the following debts in the city of Baltimore, in the state of Maryland, to-wit : To Langston & Co., $611 54 ; to Benjamin Crane, $491 40 ; to Lewis & Drost, $778 93 ; to Spikes & Pricht, $974 76 ; to Dundalet & Co., $469 69 ; to T. Twist, $309 88 ; to Yeakle & Cobb, $478 35 ; to T. Bowley, $819 79 ; to Ezra Gates, $197 17 ; to N. Ward, $102 16 ; to James Stodges & Bro., $1289 64, with such interest as may be due thereon, but no costs that have accrued or that may accrue upon any of them by suit.

" And also the following persons of Philadelphia, Pennsylvania, the following debts, to-wit : To F. Dutching, $434 66 ; to Yard & Tideware, $997 ; to Kemple & Ringle, $771 40 ; to W. Morris, $1009 74 ; to S. J. Levy, $666 90 ; to Jules Haue, $189 07 ; to H. M. Hartsman, $102 48 ; and to H. Bazon, $91, with all interest that may be due on the same.

" And also the following debts in the city of New York, viz : To M. Huza, $195 75 ; to Martellis & Halderman, $182 ; to M. Lawson, $746 26 ; to Baldwin & Bliss, $279 87 ; to Edward May, $330 ; to Lowitz & Becker, $483 37 ; to Devismes & Dumaulies, $164 68 ; to P. F. Lewis & Bro., $400 ; to Rehne Beno, $292 50 ; to P. Murray, $326 22 ; to Mayer & Meister, $460 75 ; to Ward & Dickson, $426 29 ; to Feidenlenner, $417 13 ; to David Morrison, $175 09, with all interest that may be due upon them. If there should not be sufficient means to pay all these of the third class, in full, then the amount remaining after paying the second class, shall be distributed and paid, pro rata, to the debts of this third class. If, however, there should be

sufficient means to pay all the debts of this third class and a balance should remain, then the said parties shall apply such balance to the payment, fourthly, of the following debts, viz: To G. Moss, of New York, $213 50.; to A. F. Jarvis, of New York, $213 00; to S. R. Towbridge, of New York, $587 37; to Modan Matherba, of New York, $148; to F. Rees & Bro., of New York, $175 73; to Charles L. Noe, of New York, $123; to Abluro, of New York, $202 62½; to Campbell & Rockman, of New York, $251 55; to Joseph B. Smith, of New York, $744 54; to T. Bowles, of New York, $517; and to Rogers & Walker, of New York, $1284 44.

"If, after paying the first, second and third class of debts and obligations, as heretofore enumerated and directed, the balance of means should not be sufficient to discharge in full the debts enumerated in this fourth class, then such balance shall be distributed, pro rata, among them. If, however, there should be enough to pay all, and a surplus remains, such surplus shall be paid over to the party of the first part, his heirs, executors, administrators and assigns.

"It being nevertheless understood and agreed, any thing hereinbefore contained to the contrary notwithstanding, that said parties of the second part shall be authorized and empowered to reserve and retain to their own use, out of any moneys belonging to said estate, or arising from said sales and collections, compensation for their services, over and above the expenses of five per cent. for receiving and paying out all sums of money.

"In testimony whereof, the said parties have hereto set their hands and affixed their seals, the day and year first herein written. "W. BROADUS THOMPSON, (seal.)
"THEODORE LABEAUME, (seal.)
"L. CLAVERDETSCHER," (seal.)

The only possible objection which could be urged against this deed is the provision requiring the assignees to pay no costs on the debts that have accrued, or that may accrue on

them by suit. · This provision extends to the debts named first in the third class, being due in the city of Baltimore. These debts, with interest due, to be paid, but no costs. We cannot satisfy ourselves that this provision vitiates this deed of assignment. A man may prefer his creditors. This principle of preferring one creditor or one set of creditors to another, is too well settled at this day for a serious doubt of its legality to be entertained. Now this provision is to save the property thus assigned from useless costs. Men may sue if they will, and may get from their assignees all the principal and interest, but not the costs. This does not render the deed void, and upon its face there is no other objection of any serious weight.

2. Do the facts in proof make this deed void as to the assignees and creditors of Claverdetscher? We consider these facts do not; that the deed is not void on its face, nor does the testimony in this case make it void in fact. The evidence consisted of this deed of assignment, and also of some evidence " tending to show that, at and before the date of said assignment, Claverdetscher had a store in St. Louis, which was carried on by his wife; that he was largely indebted and insolvent; that his creditors were pressing for payment, and some of them had obtained judgment; that his agent, one of the assignees, promised payment and good assurances of Claverdetscher's ability to pay; that some of the creditors were induced by said agent to refrain from issuing execution from time to time, and that while said creditors were thus waiting, the deed of assignment was drawn up, executed, acknowledged and recorded, without the knowledge of said creditors, and that after said assignment, his wife, with his privity, secretly shipped at St. Louis a quantity of merchandise belonging to him, to be carried to Cincinnati, without this state." This is all the evidence to bring home fraud to the assignees. In looking over the case carefully, I find that the court below found that there was no evidence offered to show that the persons named in the deed of assignment as creditors were in

reality creditors. This omission or this lack of proof might have induced the court to come to the conclusion that the deed of assignment was fraudulent and made to hinder and delay creditors. But the deed of assignment itself is *prima facie* proof of such debts, is *prima facie* proof of such creditors, and there was no necessity for proving on the trial that such persons therein named were creditors. The lack of such proof then should have had no weight in inducing the finding of the court. There is no evidence bringing home to the assignees any notice of any design or contrivance or trick of Claverdetscher to defraud his creditors, or to hinder and delay them in the collection of their debts.

Our statute makes provision for such assignments; it requires an inventory to be filed with the clerk of the circuit court; requires the assignee to give bond requiring him faithfully to discharge the trust. The assignee is required to give notice in some newspaper of the time and place of adjusting demands against the estate of the assignor, and the assignee is authorized to require such proof of the justice of the demand against the estate, as is required to prove similar demands in the circuit court in suits between the original parties to the contract. Under this statute, the circuit court can dismiss the assignee and can appoint another. Before, then, any demand can be allowed against the estate of the assignor, proof can be required by the assignees. Therefore, there is now no necessity for proving that the persons named as creditors are really so; they get nothing if they are not; they must prove their demands by evidence, satisfying the assignee of their justice, before he allows the same, notwithstanding they have been named in the deed of assignment. But on the trial of the fraudulent nature of the deed or not, such proof is not required.

3. There can be no question whether an assignment of a debtor's property to a trustee for the benefit of his creditors is for a valuable consideration or not, because the debts due to the creditors constitute a valuable consideration, in the highest

sense of the terms ; and the obligation of the trustee to perform the trust according to the provisions of the deed, is a sufficient valuable consideration for him, so far as he is concerned. Burrell on Assignments, 219. This is peculiarly so in our state, under the statute of assignments. In New York, the consideration of one dollar, merely nominal, or the fact that the assignee was a creditor, as appears on the face of the assignment, is sufficient to transfer the legal title to the property and vest it in him. The amount of consideration was never material for this purpose, and it seems to be well settled that the relation of debtor and creditor between the parties, and the legal consequences of the assignment, constitute a sufficient consideration as between them. In the case of *Lawrence* v. *Davis*, 3 McLean, 177, Justice McLean said that an assignment for the benefit of creditors cannot be considered void for want of consideration.

4. There is no evidence on the record showing any act done by the assignees as indicative of fraud on their part ; no notice of any evil or wrongful purpose between the assignor and his assignees : nor will the fact that one of the persons who was afterwards made assignee, having made remarks that Claverdetscher was able to pay his debts and would pay his debts, have any tendency to show that this assignment was fraudulent. The act of Claverdetscher's wife secretly shipping some of his goods to Cincinnati, after the assignment, cannot have the effect of rendering this assignment void. There is a total failure in proof, requisite to bring knowledge of this act of Mrs. Claverdetscher to the assignees, much less to implicate them with her in the act.

5. It is a principle that the character of the assignment will not be affected by subsequent events, and if valid in its creation, no subsequent fraudulent or illegal acts of the parties can invalidate it. Burrell on Assignments, 401. In *Browning* v. *Hart*, 6 Barb. S. C. Rep. 95, Page, P. J., said, in delivering the opinion of the court, " a fraudulent intent, entertained subsequent to the execution and delivery of the assign-

ment, will not invalidate it." Here, then, apply this rule to the act of Claverdetscher and his wife, in secretly endeavoring to remove part of his property to Cincinnati, and it will be seen that such act cannot render void the assignment. Again, it does not appear that the property sought to be thus secretly removed by the wife, was a part of that which had been assigned. The assignment is for the property in the store on Fourth street, in Glasgow Row; the property which she is charged with secretly trying to remove, may be or may not be a part of this store property. In the same case of *Browning* v. *Hart*, above cited from 6 Barb., it was held, that an assignment executed by a person in embarrassed or insolvent circumstances of his property, in trust for the benefit of his creditors, is valid, if it unconditionally and absolutely devotes the whole of the assigned property to the payment of his debts, provided it be made without any intent to hinder or defraud his creditors.

In this case, then, the facts do not connect the assignees with any act or intention of Claverdetscher to hinder, delay or defraud his creditors; nor is there proof of any knowledge on their part, of such intention or design on the part of Claverdetscher. The assignees were discharging their trust under the order of the Circuit Court. The conveyance to them is binding and efficacious; it transfers to them the property; it becomes vested in them for the benefit of persons who are not to be affected by any act of Claverdetscher, without their knowledge. See *Knox* v. *Hunt & Labeaume*, 17 Mo. Rep. 174.

6. Lord Mansfield said in *Cadogan* v. *Kennett*, Cowper, 434, "The question in every case is, whether the act done is a *bona fide* transaction, or whether it is a trick and contrivance to defeat creditors." It has been decided in New York that an assignment authorizing the assignee to sell the property assigned on credit is void for that very reason. This doctrine is not in accordance with the views of this court upon this subject; nor does this court approbate the practice of the New York courts in their zeal to declare deeds of as-

signment and other conveyances fraudulent and void *per se.*
These matters, in most cases, had better be tried by juries, and
facts had always better be made to appear in such cases. Still
we will not say that the courts cannot or should not declare
those deeds in which provisions are contained obviously repug-
nant to the law of the land, void *per se.*

A deed may delay creditors and not be void, where such de-
lay is not its principal object. 13 Smedes & Marsh. 22.
Every conveyance of property by an insolvent or embarrassed
man, to the exclusive satisfaction of the claims of some of his
creditors, has necessarily a tendency to defeat or hinder his
other creditors in the collection of their demands. But if the
sole purpose of such a conveyance be the discharge of an
honest debt, it does not fall under the operation of the statute
of fraudulent conveyances. Iredell's Law, 490. Lord Ellen-
borough said, in the case of *Meux* v. *Howell*, 4 East. 13 : "It
is not every feoffment, judgment, &c., which will have the ef-
fect of delaying or hindering creditors of their debts, &c., that
is therefore fraudulent within the statute ; for such is the effect
*pro tanto* of every assignment that can be made by one who
has creditors. But the feoffment, judgment, &c., must be de-
vised of malice, fraud or the like, to bring it within the statute.
Every assignment of a man's property, however good and hon-
est the consideration, must diminish the fund out of which
satisfaction is to be made to his creditors. In order, then, to
bring an assignment by a debtor within the statute of fraudu-
lent conveyances, on the ground of an intent to hinder and
delay creditors, there must be an intent to hinder and delay
actually entertained by the debtor. Burrill on Assignments,
382. This is the rule of construction adopted in many cases,
and it meets with the approbation of this court; though in
some of the states of this Union a different rule of construc-
tion prevails.

By our statute of assignments, the circuit court or circuit
judge, may direct the assignee to sell for cash in hand or on
credit, as shall appear for the interest of all concerned, &c.

3—VOL. XIX.

Upon the whole case, this court is of opinion that the judgment of the court below is erroneous ; that the finding of the court below was improper and should have been for the assignees, the garnishees, and this court, therefore, reverses the judgment of the court below, and proceeds to render such judgment as the court below ought to have given in the premises, and accordingly judgment will be rendered here in favor of the garnishees. The other judges concur.