DOUGHERTY v. COOPER *et al.*, *Appellants*.

1. **Fraudulent Conveyances.**  The right to dispose of one's property for an honest purpose, is not terminated by indebtedness or insolvency ; although such a disposition may or does have the effect of hindering or delaying creditors.

2. ———— : BONA FIDE PURCHASERS.  A sale made with the intent to hinder, delay or defraud creditors will not be held invalid against the purchaser, if he buy without notice of such intent, and for a valuable consideration paid before notice of the vendor's fraud.

3. ———— : ————.  It is sufficient to invalidate a sale made with the

Dougherty v. Cooper.

intent to defraud creditors, that the purchaser knew of such intent. An instruction, therefore, requiring that he both know and be privy to the vendor's fraud, is faulty.

4. ———: ———: NOTICE. The levy of an execution by a creditor of the vendor upon the goods sold and in the possession of the purchaser, is notice to him of imputed bad faith in the sale, and if he thereafter pay the purchase money, or any part thereof, he will not be deemed as to such payment an innocent purchaser without notice, if such sale was fraudulent.

5. ———: ———: REPLEVIN. Where a purchaser pays part of the price before he has notice of the intent on the part of the vendor to defraud creditors by the sale, he is entitled to be protected to the extent of such payment. How such indemnity may be effectuated in the statutory action, in the nature of replevin, is considered.

6. ———. An instruction requiring the jury, before determining a sale to be fraudulent, to find that the vendor sold the goods with intent to hinder and delay his creditors; *Held,* error.

*Appeal from Nodaway Circuit Court.*—HON. H. S. KELLEY, Judge.

REVERSED.

*Strong & Mosman* and *Johnston & Alderman* for appellants.

*L. Dawson* and *C. A. Anthony* for respondents.

PHILIPS, C.—This is an action of replevin. One Sandifer was a merchant in the town of Graham, Nodaway county. The plaintiffs claim to have bought out his stock of goods about the 1st day of February, 1877, at the agreed price of $2,250; the goods invoicing about $2,400. Sandifer, at this time, was largely in debt, more than the amount of his assets, and was then being pressed by his creditors. Wells & Co. having obtained a judgment against Sandifer, the sheriff, Jos. M. Cooper, under an execution issued on said judgment, went to make a levy on said goods, or so much thereof as might be necessary to satisfy the debt, amounting to $650, and costs $4.95. Levy was made the 23rd day of March, 1877. When the sheriff went to make

34—77

the levy, he informed plaintiff Dougherty that he was or-
dered to seize enough goods of Sandifer's old stock to
satisfy the execution. And as it was mutually deemed
least injurious to lock up the stock rather than remove
part of the goods, plaintiffs locked the store and handed
the key to the sheriff, who made return of levy on said
date. On April 5th following, plaintiffs brought this ac-
tion of replevin against the sheriff and judgment credit-
ors and re-took the goods into their possession. The answer
alleged that the sale of the goods by Sandifer was fraudu-
lent as to his creditors and that plaintiffs were privy thereto,
and had not paid anything for the goods.

The evidence tended to show that the circumstances
under which the purchase was made were calculated to
throw suspicion upon its integrity, and that the plaintiffs
were apprised of Sandifer's financial embarrassment and
the solicitude of some of his creditors, particularly of
Wells & Co. The manner of the payment, as agreed upon,
was substantially as follows: M. N. Dougherty agreed to
turn over to Sandifer three notes on George and M. Mowry,
amounting to about $1,308. The balance was to be paid
by conveying to Sandifer an interest in a house and lot in
Graham and one-half the contents, consisting of a saloon,
and the balance in money—realty estimated at $540, and
stock in saloon at $372. The evidence left the fact in doubt
as to whether any part of this purchase money was actu-
ally paid at the time of the levy in question. Touching
the time of the transfer and the delivery of the Mowry
notes, M. N. Dougherty, himself, says: "I think, but am
not certain, that it was before the sheriff seized the store."
As to the balance of the purchase consideration, there is
no pretense that it was paid prior to the levy. In fact
plaintiffs' evidence shows affirmatively that it was long
after.

As is usual in such cases, a great number of instruc-
tions were unnecessarily asked, which will be noticed here
after, so far as pertinent to the questions to be reviewed.

Dougherty v. Cooper.

The jury found the issues for the plaintiff, and the defendants bring the case here on appeal.

Two principal questions involved in the issue in the trial court were: Was the sale of the goods by Sandifer to hinder or delay or defraud his creditors? If so, were the plaintiffs participants in the fraud; in other words, were they purchasers in good faith? The fact that Sandifer was in debt or insolvent at the time of the alleged sale, did not destroy his *jus disponendi* over his property. He had the right to sell or dispose of it, provided he did so for an honest purpose and not to withdraw it from process for his just debts. An embarrassed debtor may make sale of his property which he deems advantageous to enable him to raise the necessary means for paying off his creditors and to prevent its sacrifice at forced sale under execution, and for this purpose the law recognizes his right to sell for cash or on time. *Hickey v. Ryan*, 15 Mo 62; *Buckner v. Stine*, 48 Mo. 407; *Green v. Tanner*, 8 Met. 411.; *State ex rel. Peirce v. Merritt*, 70 Mo. 275; *Murray v. Cason*, 15 Mo. 379; *Waddams v. Humphrey*, 22 Ill. 661, 663; *Nelson v. Smith*, 28 Ill. 495. The fact that the sale may or does have the effect to hinder or delay the creditors, is not sufficient to avoid it. *Gates v. Labeaume*, 19 Mo. 17; as, to have that effect the debtor vendor must have entertained a design to hinder or delay his creditors, and that must be effectuated by making the sale. *Gates v. Labeaume, supra; Murray v. Cason*, 15 Mo. 379. Defendants' counsel seem to have framed their instructions in the main upon the idea, if Sandifer was largely indebted and in failing circumstances, and sold his property without having sufficient to meet his debts, the court should declare this to be a fraud. It might be evidence of fraud, a fact to be submitted to the consideration of the jury for their determination. And the question of fact—the intent—the court submitted favorably enough to the jury in the instructions given of its own motion. The court in previous instructions had properly advised the jury as to

1. **FRAUDULENT CONVEYANCES.**

the necessity of finding the existence of a fraudulent intent on the debtor's part.

Finding such intent to exist on Sandifer's part is not sufficient, however, to invalidate the sale as against the 2. ——: bona fide plaintiffs, provided they were purchasers for purchasers. a valuable consideration without knowledge of such fraudulent intent. In other words, if Sandifer's object in making the sale was to defeat his creditors, or Wells & Co., in their efforts to collect their debts, three conditions must concur to protect the title of the purchaser: 1st, He must buy without notice of the bad intent on the part of the vendor; 2nd, He must be a purchaser for a valuable consideration, and 3rd, He must have paid the purchase money before he had notice of the fraud. *Arnholt v. Hartwig*, 73 Mo. 485; *Bishop v. Schneider*, 46 Miss. 472; *Dixon v. Hill*, 5 Mich. 408; *Wormley v. Wormley*, 8 Wheat. 449. Had the defendants' counsel tried their case below on the theory invoked in argument here, a different result might have been reached by the jury, and certainly the questions to be decided here would have been simplified. Why the issue was indirectly presented by counsel and court to the jury, as to whether the plaintiffs had in fact paid the purchase money, or any part thereof, at the time of the levy of the execution is remarkable in view of the fact that it is conceded that over $800 were not then paid, and it was debatable whether any of it had then been paid. If the purchase price was not paid at the time of the sale the plaintiffs could not protect themselves against Sandifer's fraud, if proved, by taking shelter under the cover of innocent purchasers. In the seventh instruction asked by defendants, a feint was made at raising this issue:

7. If the jury believe from the evidence that plaintiffs, after they received the goods in dispute, and before payment for the same by them to Sandifer in the manner stated in the evidence, knew of Sandifer's indebtedness, and that such transfer and disposition of Sandifer's effects would operate to delay or hinder Sandifer's creditors in

the collection of their demands against him, then such alleged sale and transfer was void as to defendants and others, creditors of Sandifer, and their payment of any part of the purchase money, subsequently to the levy, for the goods, gave them no better right than they would have had without such payment.

The intended virtue of this instruction was, however, lost by carrying into it the vice common to defendants' instructions by asserting that if the sale had the effect to delay or hinder the creditors and the plaintiffs had knowledge thereof, "then such sale was void."

The nearest approach to the submission of this issue is found in the following instruction given on behalf of plaintiffs:

1. If the jury believe from the evidence that Dougherty and Hutchinson, or either of them, purchased the goods in controversy, or any part thereof, from Sandifer, in good faith and for a valuable consideration, and said Dougherty and Hutchinson, or either of them, took possession of said goods prior to the levy thereon by defendant Cooper, and that said goods were in possession of said Dougherty and Hutchinson at the time of said levy, said Dougherty and Hutchinson acquired a valid title to said goods, and the validity of such sale will not be impaired or affected, notwithstanding said Sandifer, in making such sale, intended to hinder, delay or defraud his creditors, unless the jury shall further believe from the evidence that said Dougherty and Hutchinson, or either of them, knew of and were privy to such fraudulent design on the part of Sandifer at the time it was made, or before the contract of purchase was executed by payment for the same on the part of said purchasers by the delivery of the notes and property in payment thereof, according to the terms of said contract of purchase.

It is obvious on analysis of this instruction that it does not with directness present the issue. It is faulty in requiring the jury to find that Dougherty and Hutchinson

"knew of and were privy to the fraud of Sandifer at the time they made the payment." The word "privy" should not have been employed. It was probably occult to the jury and was liable to misconstruction. The instruction should have said "knew of such fraudulent design on the part of Sandifer at the time it was made, or that they had paid the purchase price of said goods to him prior to the levy in question."

The making of the levy on the goods under the facts of this case, was notice to Dougherty and Hutchinson of the imputed bad faith in their purchase, and after that they could make no payment in good faith; whereas this instruction by referring the jury to the time when "the contract of purchase was executed by payment, etc., according to the terms of said contract of purchase," was confusing and left the jury to infer that the plaintiffs were at liberty to pay at any time until they actually "knew of such fraudulent design," or that they were at liberty to pay "according to the terms of said contract," the terms permitting the half interest in the lot and saloon to be turned over long subsequent to the levy.

*4.* ———: ———: *notice.*

None of the instructions submitted deal with the question as to the effect upon plaintiffs' and defendants' rights dependent on the conceded fact that at the time of the levy over \$800 of the purchase money was not paid, nor even until after the suit was brought. There are respectable authorities holding that before the purchaser can maintain his position or be protected as an innocent purchaser, he must have paid the whole of the purchase money. This was the rule in England. But the better doctrine, and one most consonant with reason and justice, is that where the purchaser has paid a part of the price before notice of the fraud, he is entitled to be protected *pro tanto*. This question is well reviewed and the authorities collected in *Haughwout v. Murphy*, 7 C. E. Green (N. J. Eq.) 531, 547, 548, 549. The true rule of protection to him is indemnity. *Campbell v.*

*5.* ———: ———: *replevin.*

*Nichols*, 4 Vroom 87, 81; *Campbell v. Campbell*, 3 Stockt. 277.
Such a purchaser by his contract acquires, as against his
vendor, the right to the possession of the property, and
the right to a perfected title on full performance on his
part. But by section 2, Fraudulent Conveyances, Wag-
ner's Statutes, all assignments of goods "with the intent to
hinder, delay or defraud creditors," etc., are declared as
against creditors "to be clearly and utterly void." All
that will enable the vendee to avoid the denunciation of
this statute is, that he has in good faith bought and paid
the purchase money. Where he has paid only a part,
while he may not retain the property against the defrauded
creditor prior in right, yet equity will interpose for his in-
demnity to the extent of the money he has honestly put
into the property prior to notice. Cases cited, *supra*. There
is no question of this rule in equity. Campbell, J., in
*Dixon v. Hill*, 5 Mich. 409, says: "In equity a purchaser
is protected to the extent of payments actually made and
no further, even where future payments are provided for,
unless those are secured in such a manner that the pur-
chaser cannot be relieved against them. This could only
happen where he gives negotiable paper; for upon a debt
not negotiable, the failure of title would exonerate him.
It is unnecessary to decide whether in a court of law a
purchase can be assailed or apportioned where there has
been a partial payment. In the case before us, no consid-
eration whatever had been paid or secured. Such a pur-
chase cannot avail either at law or in equity against the
remedies of creditors." Why may not the rule be applied
in our statutory proceeding in replevin, which in some re-
spects is *sui generis?* Judge Napton, in *Dilworth v. McKelvy*,
30 Mo. 150, asserted that this statute possessed sufficient
flexibility to adjust all such equities arising in the action.
"The judgment in each case must be modified by the cir-
cumstances so that the merits of the controversy may be
settled in one action. The statute is a general one, de-
signed to meet all the exigencies which the old action of

replevin did, and the equity of its provisions will embrace these modifications of the forms in which judgments should be entered." This construction is approved and applied in *Boutell v. Warne*, 62 Mo. 350, and in *Jones v. Evans*, 62 Mo. 382.

Applying the principle laid down in *Dilworth v. McKelvy* and *Boutell v. Warne*, there would be no difficulty under proper instructions in protecting and securing the rights of both parties. The sheriff, under his levy, held the property only for the purpose of making the judgment of $650 and costs. That could be paid and leave the plaintiffs amply sufficient indemnity for the purchase money paid by them when the levy was made; for the conceded value of the whole property is $2,250. As plaintiffs have possession of the property, should the issue be found for defendants on the ground last discussed, judgment on their election should be rendered only for the amount of the special lien or claim. *Seaman v. Luce*, 23 Barb. 254, 255; *Dilworth v. McKelvy, supra.*

In order that this case may be properly tried in accordance with the principles of law herein enunciated, I ——. am of opinion that justice to the defendants requires a re-trial. In the event of another trial, it may be well enough to observe that the third instruction is faulty and amounts to error. It required the jury, in order to establish fraud against Sandifer, to find that he sold "the stock of goods * * with intent to hinder *and* delay his creditors." The language of the statute is in the disjunctive—"hinder *or* delay." Such an instruction has been denounced by this and other courts. *Burgert v. Borchert*, 59 Mo. 80; *State ex rel. v. Nauert*, 2 Mo. App. 295.

The fifth instruction given for plaintiffs, was also bad:

5. The jury are instructed that if they believe from the evidence that at the time the sale and delivery of the goods were made, the sale and purchase were made in good faith and for a valuable consideration; that no matter happening subsequently can render the sale fraudulent; and

if the jury believe from the whole evidence, facts and circumstances, that the sale was made by Sandifer in good faith and for a valuable consideration, and the purchase made by plaintiffs in good faith and for a valuable consideration, and possession of said goods was immediately given to plaintiffs, and that said goods remained in the exclusive possession of the plaintiffs from the date of said sale until the same were levied upon and seized by the sheriff, they will find for plaintiffs.

In view of the importance which attaches in this case to the question of payment of the purchase money, the expression " no matter happening subsequently," was liable to misconstruction by the jury.

The judgment of the circuit court, in my opinion, ought to be reversed and the cause remanded for re-trial. MARTIN, C., concurs; WINSLOW, C., absent.