WILLIAM SELLERS, Interpleader and Appellant, v. S. P. BAILEY, Plaintiff in Attachment, Respondent.

Kansas City Court of Appeals, February 6, 1888.

1.  PRACTICE—WEIGHT OF EVIDENCE.—This court will not weigh evidence which has been passed upon by the trial court. In the absence of anything showing prejudice, passion, or corruption on the part of the jury, it will not disturb a verdict on the ground of its being against the weight of the testimony.

2.  DEBTOR AND CREDITORS—RULE CONCERNING PREFERENCES—CASE ADJUDGED.—A debtor has the right to make sale of his property for the purpose, in good faith, of satisfying creditors, or any one of them; and he has the right to prefer a creditor, even though such preferred creditor may be his relative. And even if the debtor intended to defraud his creditors by the sale, yet unless the purchaser knew of such intent or fraudulent design, or was possessed of such facts at the time of making such purchase, and before the payment of the purchase money, as would apprise him of the intent of the debtor, the sale would be valid. But if the purchaser participate in the fraud, the sale is void, notwithstanding he pays value for the property.

APPEAL from Atchison Circuit Court, HON. C. A. ANTHONY, Judge.

*Affirmed.*

The case is stated in the opinion.

A. B. DURFEE, L. J. MILES, J. W. STOKES, and H. S. KELLEY, for the appellant.

I. The appellant insists that the court erred in overruling the motion for a new trial. This involves an inquiry into the merits of the causes or grounds upon which a new trial was asked. The verdict is against the evidence and against the law. It is not denied that the cows in controversy were purchased of Weaver by the interpleader. The question is, was the sale made by Weaver with intent to hinder, delay, or defraud his

creditors, and if so, was Sellers a *particeps* in that intent, or did he have notice of it? The affirmative of these propositions is with the attaching creditor, and must be proved by him. We contend that there was no evidence before the jury to establish either of them. It is the settled law that the owner of property, although indebted or insolvent, may sell or dispose of it, and apply the proceeds in such manner as will best subserve his own interests ; and his right to sell involves the right of another to purchase, and the only limitation upon these rights is, that the sale or transfer shall be in good faith—shall not be made with intent to hinder, delay, or defraud creditors. The law presumes that the transaction was in good faith until the contrary be shown. And it is, also, the settled law that if the transfer was in good faith on the part of the seller or grantor, there can be no fraud in the purchase ; or if the transfer was for a valuable consideration, the good faith of the grantee or purchaser is the only question to be inquired into. He must participate in, or have notice of, the fraudulent design of the seller, in which case the transfer, unless it be in payment of a debt, will be void as to creditors, although he may have paid a full consideration, otherwise it is valid and he will be protected. Bump on Fraud. Conv. 230; *Little v. Eddy,* 14 Mo. 160 ; *Cason v. Murray,* 15 Mo. 378 ; *Johnson v. Sullivan,* 23 Mo. 474 ; *Knox v. Hunt,* 18 Mo. 174 ; *Byrne v. Becker,* 42 Mo. 264 ; *Bigelow v. Stringer,* 40 Mo. 195 ; *Allen v. Barry,* 40 Mo. 282 ; *Stone v. Spencer,* 77 Mo. 386 ; *Bobb v. Woodward,* 50 Mo. 95 ; *Dougherty v. Cooper,* 77 Mo. 528 ; *Henderson v. Henderson,* 55 Mo. 534 ; *Ames v. Gilmore,* 59 Mo. 537 ; *Holmes v. Braidwood,* 82 Mo. 610 ; *Frederick v. Allgaier,* 88 Mo. 598. Gross inadequacy of price may be a badge of fraud, and when coupled with circumstances of secrecy and concealment, might be sufficient to avoid the sale as to creditors. *Stern v. Mason,* 16 Mo. App. 473. Here there was no inadequacy of price, and no secrecy or concealment. The trade was talked about, the

property examined, an offer made which was as liberal as any man who had capital to invest in such property could afford to make, and after two days' deliberation it was accepted by Weaver; the papers were drawn up and executed, and the consideration paid at a public place in open day, witnessed by many—any and all who happened to be about the attorney's office, in the city of Tarkio, on that day. Weaver had a right to prefer his creditors by paying some in the sale of his property and others with the money received upon said sale, to the exclusion of others, even if one of such creditors was his father. *Sibley v. Hood*, 3 Mo. 290; *Cason v. Murray*, 15 Mo. 378; *Henderson v. Henderson*, 55 Mo. 534; *Forrester v. Moore*, 77 Mo. 651; *Shelley v. Boothe*, 73 Mo. 74; *Crow v. Andrews*, 24 Mo. App. 160. And it is no objection to the transfer, when made in payment of a debt, that it operates to hinder and delay other creditors, or that it was the intent of the debtor that it should so operate, and that the creditor receiving it was aware of that intent, provided he received it with the honest purpose of paying or securing his debt; *i. e.,* the question is, did he owe the debt, and was the debt paid or secured; if so, there could be no fraud as against other creditors, and the motive of the parties to the transaction is wholly immaterial, for they did no more than they had a right to do under the law—pay or secure an honest debt. *Shelley v. Boothe*, 73 Mo. 74; *Singer v. Goldenburg*, 17 Mo. App. 549; *State to use v. Frank*, 22 Mo. App. 40; *Schroeder v. Mason*, 25 Mo. App. 190; *State to use v. Mason*, 24 Mo. App. 321; *Keiler v. Tutt*, 31 Mo. 301–7; *Young v. Slattings*, 5 B. Mon. 508. Although the purchaser may have known that the seller intended to delay or defeat some of his creditors, when the sale was for cash, yet if it can be fairly assumed that he expected the purchase money would be used, and was intended to be used, in the payment of other creditors, the sale will be upheld. *Brown v. Foree*, 7 B. Mon. 357.

II. The court erred in excluding evidence offered

by interpleader, concerning the purpose of Weaver to go to Indiana. The interpleader had a right to all the conversation, after Bailey had called out a part of it. *Binghart v. Brown*, 51 Mo. 600; *State v. Linney*, 52 Mo. 40; *Polston v. Lee*, 54 Mo. 291; *Mann v. Bist*, 62 Mo. 491; *Colt v. Ladue*, 54 Mo. 486; *State v. Barham*, 82 Mo. 67.

III. The court erred in permitting proof of transactions had by McKee, Thomas Sellers, and Hopkins, after the sale to interpleader, with reference to the disposal of the property sold or mortgaged to them by Weaver. Such evidence was calculated to poison the minds of, and influence the jury improperly, against interpleader. It was objected to as irrelevant and incompetent, and should not have been admitted. *Albert v. Besel*, 88 Mo. 150; *Nasse v. Algermissen*, 25 Mo. App. 186; *Ringo v. Richardson*, 53 Mo. 385; *Bank v. Russell*, 50 Mo. 531; *Worley ex rel. v. Watson*, 22 Mo. App. 546.

IV. The court erred in permitting Ramsay to testify to conversation and transaction between himself and Weaver, in relation to which he was Weaver's attorney. Sellers was not present and such statements of Weaver were simply hearsay and incompetent, as against him, and besides they were privileged between attorney and client, and the client had not assented to the attorney's testifying. *Cross v. Riggins*, 50 Mo. 335.

V. The instructions given on the part of the defendant in the interplea, Bailey, were not warranted by the evidence, and were calculated to mislead the jury. These instructions, provided the transaction on the part of Weaver was fraudulent, held the interpleader chargeable with notice of that intent, if he was in possession of such information as would put a prudent man upon inquiry. It was not the duty of Sellers to inquire into the motives of Weaver for making the sale, and he is not chargeable with knowledge of a fraudu-

lent purpose on the part of Weaver, merely because he failed to avail himself of an opportunity of making investigations which, if made, would have revealed the purpose. *State ex rel. v. Merritt*, 70 Mo. 275; s. c., 3 Mo. App. 578. But if the buyer knows enough of the purposes of the seller to put a prudent man on inquiry, it will be his duty to make reasonable inquiry, and if he fails of this he will be charged with notice of what might have been ascertained by such inquiry. *Rupe v. Alkire*, 77 Mo. 641.

VI. The instructions are not supported by the evidence. The court erred in refusing the second instruction asked by appellant, Sellers, viz: "It is not the duty or business of the buyer to see that the purchase price is paid to creditors on debts; therefore, if Weaver represented to Sellers that he wanted to sell, and was selling to relieve himself from the mortgages, and to raise money to pay his debts, and Sellers bought and paid for the property on the faith of such representation, and without knowledge that Weaver intended to delay, hinder, or defraud his creditors, he, Sellers, will be protected in his purchase, no matter what Weaver did with the money." We cannot conceive of any valid or even plausible objection to this instruction. It was warranted by the testimony of Sellers, corroborated by that of Weaver.

VII. The court erred, also, in refusing the seventh instruction asked by interpleader. The court having repeatedly asserted the principle in the instructions on both sides, that if Sellers had such information as to the intent of Weaver as would put a prudent man on inquiry, this instruction was intended to prevent such instructions from misleading the jury, by giving them to understand that, "unless the jury believed, from the evidence, that sufficient knowledge was obtained by said interpleader to put him upon his inquiry in regard to the motive of Weaver, and, upon such inquiry, he could have ascertained or learned that the intentions of Weaver were fraudulent in making the sale, etc., then, and in that

case, he would not be required to make inquiries in regard to the motives or intentions of Weaver in making sale of his property."

VIII. The court erred in overruling the motion in arrest. There was a trial without an issue, a mistrial, and no judgment should have been given. There was no answer or denial filed to the interplea. The judgment was for the wrong party.

JOHN D. CAMPBELL, and LEWIS & RAMSAY, for the respondent.

I. Appellant's first point, "The verdict is against the evidence and against the law," has, to a great extent, already been anticipated in our statement. The jury were the judges of the weight of the testimony and the credibility of the witnesses, and, if there was evidence tending to show the fraud, and to show Sellers' knowledge thereof, or participation therein, the verdict should not be disturbed. *Reid v. Ins. Co.*, 58 Mo. 429. Both the jury and the trial court below, who had before them all the evidence in detail, both the questions and the answers, and saw the demeanor of the witnesses and parties at the trial, have found that there was such evidence. In fact, the question as to whether there was evidence or not is not raised in the motion for a new trial. Sellers did not buy to secure any debt of his own, so the doctrine in *Shelley v. Boothe*, 73 Mo. 74, does not apply, nor did he show the slightest concern as to what Weaver should do with the $2,136 surplus. If a fraud was intended, and Sellers participated therein, then no matter what was paid, or even if the sale was made to secure a debt, the sale would be void as to other creditors not participating therein. *Potter v. Stevens*, 40 Mo. 229; *Stone v. Spencer*, 77 Mo. 356; *Holmes v. Braidwood*, 82 Mo. 610; *McNichols v. Richter*, 13 Mo. App. 515.

II. Appellant's next point grows out of the alleged exclusion of a conversation between Weaver and McGee. If that was material and true, appellant could have

proved by scores of witnesses the time that trains left
Westboro. Such evidence, if it would have had any ef-
fect, would have been to show not only an eagerness to
get away, but a fear of waiting until next day to leave.
Even if the exclusion of this evidence was a technical
error, it could not possibly hurt appellant. Besides, no
such question was raised in the motion for a new trial.

III. To appellant's third point we reply that no
objection was made to proof of anything done by Hop-
kins or Thomas Sellers, and no objection at all, except
in a general way, to McGee's cross-examination in re-
gard to the mortgage, sale, purchase, and shipment of
certain mules, upon which Thomas Sellers held a mort-
gage from Weaver, and which, according to Wm. Sel-
lers' testimony, was turned over to Thomas by Weaver
at same time of the sale of the other stuff. The objec-
tion was not made until all of the evidence was in, nor
is it specific, nor does the error assigned in brief corres-
pond with the objection made. Whether the objection
was made at the proper time, this court cannot tell.
*Holmes v. Braidwood*, 82 Mo. 610.

IV. Appellant's second instruction was erroneous,
for several reasons. It singles out a part of the facts of
the case, and asks a finding on them alone. *Bank v.
Currie*, 44 Mo. 91 ; *Beauchamp v. Higgins*, 20 Mo. App.
514. It omits entirely the element of prudence or cau-
tion that devolved upon interpleader under the circum-
stances. It ignores all consideration of facts and
circumstances calculated to put interpleader upon in-
quiry. It is a bid for wilful blindness and stupidity in
the purchaser, and, if held to be good law, we may as
well "hang up the fiddle and the bow" in all similar
cases ; all that will be necessary to protect fraudulent
grantees will be for the grantor to say he wanted to sell
to pay his debts, and for the grantee to say, no matter
what the circumstances, that he believed the grantor.
The instruction is adroit, but wholly vicious. So appel-
lant's seventh instruction was rightly refused, as not

being based upon the evidence, and, besides, is confusing and absurd.

V. The loss of the answer should not prejudice respondent. Having been filed by leave of court in vacation, there is no record entry of it. The case was twice tried ; the filing of the answer was not overlooked. The issues were formed. The case was tried throughout as though the issues were made up. Both parties tried the case upon the same theory, and should not be allowed to question it. *Bettes v. Magoon,* 85 Mo. 580. The court is presumed to have acted correctly in submitting the issues to the jury. This it would hardly have done without an issue recognized by the parties. Even if there had been no answer to the interplea, it is too late to object. "It has been repeatedly held, under certain limitations, that when a trial is proceeded with as if a certain issue were made in the pleadings, it is too late, after verdict, to raise the objection that the issue was not made in the pleadings." *Young v. Glasscock,* 79 Mo. 579 ; *Edmonson v. Phillips,* 73 Mo. 58 ; *Smith v. Lindsey,* 89 Mo. 76 ; *Coffin Co. v. Rubleman,* 15 Mo. App. 280 ; *Henzlee v. Cannefax,* 49 Mo. 295 ; *Howell v. Reynolds Co.,* 51 Mo. 154. This question was not raised in the court below in any manner whatever, not even in the motion in arrest, for that specifies nothing, and could not be raised now. *State v. Saline Co.,* 51 Mo. 522 ; *Holmes v. Braidwood,* 82 Mo. 610 ; *Pitman v. Railroad,* 22 Mo. App. 589. Besides, interpleader, under any state of facts, would have to introduce proof of his title, and if, in doing so, it appeared to be fraudulent, he could not recover.

VI. The motions for new trial and in arrest are both indefinite. "All motions should be accompanied by a written specification of the reasons upon which they are founded, and no reason not so specified shall be urged in support of the motion." No objection is made, in the motion for new trial, to the rejection of testimony offered by interpleader, which, of itself, clearly disposes of appellant's second assignment of error, in regard to

Weaver's conversation with McGee. The motion for new trial nowhere asserts that there was no evidence to support the verdict or instructions, but only that the verdict was against the evidence. All of appellant's objections, on account of alleged want of evidence, fall to the ground. *Fox v. Young*, 22 Mo. App. 386; *Pittman v. Railroad*, 22 Mo. App. 589. The motion for new trial does not specify what instructions were given that were contrary to law, or that were refused that should have been given, and says nothing about any instructions modified by the court. The court could not possibly tell, from the motion, what particular instructions were complained of, or to what to direct its attention. It cannot be determined whether the errors assigned here are the ones presented below. The objection in the motion as to admitting illegal evidence is scarcely less indefinite; while the sixth ground, that the verdict "should have been for the interpleader," means nothing. *Pittman v. Railroad*, 22 Mo. App. 589. The motion in arrest is equally indefinite. It points out nothing whatever. Had it, for instance, called the attention of the court to the absence of an answer, that defect, if there was one, could have been corrected by a *nunc pro tunc* entry.

VII. On the whole, the evidence and the instructions submitted the case fairly to the jury, the judgment is clearly for the right party and should be affirmed. *Bridge Co. v. Ring*, 58 Mo. 491.

ELLISON, J.—Bailey instituted an attachment suit against Henry Weaver, and attached two cows as the property of Weaver. Sellers filed his interplea claiming the cows as his property. A trial resulted adversely to the interpleader and he appeals. The interpleader claims to have purchased the cows from the defendant in the attachment suit and the case presents two questions: (1) Was the sale by Weaver to Sellers made with intent to hinder, delay, or defraud his creditors? and (2) did Sellers participate in the fraud, or did he

know of the fraud intended by Weaver? There was evidence in the cause tending to support both sides of both questions, and if the instructions given by the court were correct expositions of the law governing the case and fully covering the issues presented, we will affirm the judgment, notwithstanding some instructions may have been refused, which, in themselves, were correct.

Interpleader contends that the verdict is against the weight of the evidence. We need only reiterate, without citing authorities, that we will not weigh evidence which has been passed upon by the trial court. In the absence of anything showing prejudice, passion, or corruption on the part of the jury, we will not disturb a verdict on the ground of its being against the weight of the testimony. There was sufficient upon which to base the instructions of the court, and its reliability and weight must be left to the jury.

The evidence discloses that Weaver, who was indebted to various unsecured creditors, sold the property in controversy to interpleader, together with a large amount of other property, both real and personal, being all he owned; that the sale was made by interpleader assuming mortgages which were on the property, and paying the balance, of more than two thousand dollars, to Weaver, who immediately left the state, having thus disposed of all his property. The evidence also tended to show that, while Weaver left several creditors unpaid and unsecured, he used the greater part of the cash payment received from the interpleader in the discharge of other debts, the principal one being to his father, in Indiana.

The instructions given for interpleader present his side of the case in a fair and clear light, and I am unable to find any substantial objection to them as amended by the court. The first states Weaver's right to make a sale of his property for the purpose, in good faith, of satisfying creditors, or any one of them; that he had a right to prefer a creditor even though such preferred

creditor may have been his relative. The second told the jury that, even though Weaver may have intended to hinder, defraud, or delay his creditors by the sale, yet, unless interpleader knew of such intent or fraudulent design, "or was possessed of such facts, at the time of making such purchase, and before the payment of the purchase money, as would apprise him of the intent of said Weaver," the sale would be valid. The portion of this instruction which I have quoted was added by the court, to which exception was taken. The amendment was proper. It undoubtedly states the law, and, under the evidence in the case, it was proper to add it to the instruction as offered. Other instructions were given for the interpleader not necessary to notice. Instructions numbered two and seven were refused. I am not able to see where any harm could result to interpleader by such refusal. All that was proper in either had already been given in others.

There is, in our opinion, no just ground for complaint in the instructions for defendant. The first one states that if Weaver sold his property, intending thereby to hinder, delay, or defraud his creditors, and that interpleader knew of such intention, or "was in possession of such information, at the time, as would put a man of ordinary prudence, in business matters, upon inquiry as to the intentions of said Weaver in making such sale, then, in either case, said sale was fraudulent and void as to such existing creditors of said Weaver, and in such case it would make no difference what price may have been paid for said property." We believe this to be a correct statement of the law. If interpleader participated in the fraud, or had knowledge of the fraud, which Weaver was perpetrating by the sale, or had information of such facts as would put an ordinarily prudent man on inquiry, the sale to him was void, notwithstanding he paid value for the property. The fact that he paid for the property will not relieve him from the consequence of having become a party to the fraud. It must be borne in mind that interpleader was

not taking this property in payment of a valid debt of his own against Weaver, for in such case, as Weaver would have a right to prefer a creditor, the creditor would, of course, have a right to receive the preference. It is true that interpleader took the property subject to certain incumbrances which were liens upon it in favor of others, but he, in addition, paid a large sum in cash.

By instruction number five, the jury were told that, although Weaver, at the time of the sale, intended to use a part of the proceeds in the payment of a certain debt, but yet intended further to hinder, delay, or defraud other creditors, and not apply the whole to the payment of his debts, and interpleader knew of such intent, the sale was void. This was a proper instruction ; from it the jury must still find a fraudulent design on part of Weaver, known to interpleader. The fact that a portion of the proceeds may have been used to pay a debt will not excuse the fraud as to other creditors whom it was intended to hinder, delay, or defraud. The principles of law set forth in commenting on these instructions are supported by the cases of *Shelley v. Boothe*, 73 Mo. 74 ; *Daugherty v. Cooper*, 77 Mo. 528 ; *Rupe v. Alkire*, 77 Mo. 642.

Conceding the motion for a new trial was sufficiently specific to cover the objections now urged as to the evidence admitted and rejected, we are of the opinion that no substantial injury was done to interpleader by the court's ruling in this respect.

We have given full consideration to the points made in the brief of counsel for interpleader, and do not find ourselves at any great variance with many of the principles of law therein announced and illustrated, nor do we think they differ materially from the views held by the trial court as set forth in the instructions. If the result reached is, in point of fact, a wrong upon interpleader, the responsibility must rest with the jury, whose province it is to pass on the evidence.

With the concurrence of the other judges, the judgment is affirmed.