SEBURN JONES, *et al.*, Defendants in Error, *vs.* CHARLES O. Evans, *et al.*, Plaintiffs in Error.

1. *Replevin—Consignment—Agent—Assignment—Advances.*—Pursuant to an agreement made with a view to the purchase of certain hogheads of tobacco, they were shipped by A., to B., a commission merchant in St. Louis, to hold the same as his agents but without any charge, and to be delivered to the buyer, C., on and not before payment by him to B. of the purchase price, together with freight and all charges. To this arrangement B. and C. both agreed, and C. received and paid for part of the hogsheads, but refused to take the remainder. And A., learning this fact, demanded the tobacco from B., but was informed that he had made an assignment under the State law, and it appeared that the tobacco had been turned over to D. a warehouseman; that the warehouse receipt given by him to B., had been delivered to the assignee. A. then tendered to D. all charges due him for storage. It also appeared that B. had made to A. remittances in excess of the amount received from C. and had paid certain freight and charges on the tobacco. In replevin against D. for the tobacco, the court held; 1st, that B. had no lien on the tobacco; that the payment of freight was an advancement to C. and not to A.; that B., not being the agent of A. for the sale of the tobacco, was not entitled to be reimbursed out of the tobacco for the excess in his remittances; that the receipts gave D. no claim to the property as against A.

### *Error to St. Louis Circuit Court.*

*B. A. Hill,* for Plaintiffs in Error.

I. Warehouse receipts are negotiable by endorsement thereon. (Wagn. Stat., 220.)

The holder of those receipts is the owner of the goods in law, and the warehouseman is liable always to deliver the goods to the holder of the warehouse receipt.

II. The plaintiffs must tender the amount of the advances to the assignee with the cost and expenses; get the warehouse receipts and file a bill to enjoin the judgment that I see no way of preventing, and I do not know if they can get any remedy that way.

*Broadhead, with Broadhead & Overall,* for Defendants in Error.

I. The warehouse receipts were not negotiated but only fell into the hands of the assignee under an assignment, made to him by virtue of the laws of Missouri.

II. This property can be surrendered without the delivery of the warehouse receipts. (Wagn. Stat., 221 § 10.)

III. If it appears defendant has only a special interest in the property, as against the plaintiff, the value of the interest of the defendant in the property should be assessed, and judgment should be rendered for defendant for the value so assessed, or return of the property until such amount be paid at defendant's option. (Dilworth vs. McKelvy, 30 Mo., 149 ; Frei vs. Vogel, 40 Mo., 149 ; Gillham vs. Kerone, 45 Mo., 489 ; Nelson vs. Luchtemeyer, 49 Mo., 59.)

Hough, Judge, delivered the opinion of the court.

This was an action under the statute, regulating the claim and delivery of personal property, to recover the possession of thirty-eight hogsheads of leaf tobacco. It appears from the record that in the fall of 1873, the plaintiffs, who were dealers in tobacco at Moberly, agreed to sell to one Patrick Keller sixty-two hogsheads of tobacco in the leaf, at eight and three quarter cents per pound, to be paid for and received by Keller at Moberly. It was subsequently agreed by the parties that the tobacco should be shipped by rail to Sterling Price & Co. at St. Louis, who were to hold the same as agents for the plaintiffs, and not deliver it to Keller until it was paid for by him, at the rate of eight and three quarter cents per pound, free from any charge or expense. Keller was also to pay the freight and all charges thereon to Price & Co., so that the plaintiffs should be at no expense whatever on account of the tobacco. Price & Co. were engaged at the time, as brokers and commission merchants, in buying and shipping tobacco for Keller, and received the tobacco in question with knowledge of the agreement between plaintiffs and said Keller, and acceded to the same. After the tobacco reached St. Louis, Keller received and paid for twenty-three hogsheads, which were accounted for by Price & Co. to the plaintiffs. Keller declined to take any more of the tobacco, and left the United States and returned to his home in Ireland, which facts Price & Co. communicated to the plaintiffs. Plaintiffs came to St. Louis to receive the thirty-nine hogsheads remaining in their possession, and were informed by them that they had sold one

hogshead to other parties, and that the remaining thirty-eight were stored in defendant's warehouse; that they had made a voluntary assignment under the laws of the State of all their firm assets to George J. Davis, for the benefit of their creditors, and that the warehouse receipts issued to them by the defendants, who were warehousemen, had been delivered to said Davis, together with all the papers of the firm, but that said receipts had neither been sold, pledged nor disposed of by them to said Davis, or to any other persons. From the 10th to the 13th of September, 1873, Sterling Price & Co. remitted by letter to the plaintiffs the sum of $3,000, on account of said tobacco. These letters are called for in the bill of exceptions, but they are not copied into the record and are not before us.

Prior to the institution of this suit, plaintiffs demanded the warehouse receipts from Sterling Price & Co., and also from Davis, but they were not delivered to them ; they also tendered to the defendants all charges due to them as warehousemen on account of the tobacco or its storage, and demanded that the tobacco be delivered to them, but the defendants refused to receive payment of their charges or to deliver the tobacco, unless the warehouse receipts were returned to them, which receipts defendants at the time knew were in the possession of said Davis as assignee of S. Price & Co. Price & Co. paid the sum of $309.15 for freight and drayage on said tobacco and had received from Keller on account of tobacco and the freight thereon, the sum of $2,737.00, and plaintiffs did not pay, or offer to pay, to S. Price & Co., or to their assignee any sum of money whatever. The property was taken from the possession of the defendants and delivered to the plaintiffs by the sheriff, who, at the time of the seizure, paid to the defendants the amount of their bill and took their receipt therefor. It is admitted, that the assignee Davis, after the institution of the present suit, instituted suit against the defendants upon the thirty-eight warehouse receipts claiming from them the full value thereof.

The case was tried by the court without the aid of a jury, and the following declarations of law were given at the instance of the plaintiffs:

1. "Plaintiffs ask the court to declare the law to be, that if plaintiffs owned a quantity of tobacco and sold or contracted to sell the same to Patrick Keller, he agreeing to pay cash therefor and receive the same, the tobacco in question being a portion thereof, and the tobacco was thereupon placed by plaintiffs in the possession of Sterling Price & Co. as their agents, to be held for them until paid for by said Keller, and to be then delivered to him, and that he failed to pay for or receive the tobacco in question in any reasonable time, but abandoned the purpose of paying for and receiving the same, and Sterling Price & Co. as plaintiffs' agents deposited it in the possession of defendants for safe keeping only; and if before this suit was commenced plaintiffs offered to pay to defendants the amount of their charges and claims on the tobacco, and requested that they deliver possession of the tobacco to plaintiffs, and that they refused to receive payment of such charges or claims, and refused to deliver possession of the tobacco to plaintiffs, then plaintiffs were entitled to possession of said tobacco and should have judgment therefor."

2. "The court declares the law to be, that if plaintiffs were the owners of the tobacco in question, or entitled to the possession thereof as stated in the foregoing instructions, then the facts that Sterling Price & Co. had possession thereof as plaintiffs' agents, while holding the same for plaintiffs as their agents deposited it in the warehouse of defendants, and took the warehouse receipts in evidence therefor, and that at the time this suit was commenced such receipts were held by Sterling Price & Co., or by George J. Davis as their assignee under the deed of assignment in evidence, and that they are still so held, do not constitute a defense to this action."

3. "If Patrick Keller contracted with plaintiffs to purchase the tobacco from them, and agreed that the same should be sent by plaintiffs to Sterling Price & Co., so that plaintiffs should be at no expense therein, and Sterling Price & Co.

were notified of such agreement before they received the tobacco, and received it knowing that plaintiffs were not to pay any charges or expenses thereon, and plaintiffs did not request them to pay any charges or incur any expenses on said tobacco for them, then Sterling Price & Co. had no lien on said tobacco as against plaintiffs for any charges or expenses paid or incurred by them thereon."

4. "If plaintiffs were the owners of the tobacco and Sterling Price & Co. had it in their possession as agents for plaintiffs, and holding it for them, and as such agents they placed it in defendants' warehouse for safe keeping for plaintiffs, and took the warehouse receipts in evidence thereof, and before this suit was commenced they made the assignment in evidence, and George J. Davis became the assignee thereunder, and as such assignee, had and held said warehouse receipts at the time this suit was commenced and still holds them, then the facts of such receipts being so taken and held constitute no defense to this action."

To the giving of each of the foregoing instructions the defendants at the time objected and excepted.

The defendants asked the following declarations of law:

1. "If the defendants were warehouse men in the city of St. Louis, during the year 1873, and received the tobacco sued for from Sterling Price & Co. on storage as warehousemen, and gave said Sterling Price & Co. warehouse receipts therefor, as read in evidence, that were outstanding when this suit was brought, then the plaintiffs cannot recover in this action."

2. "If the defendants were warehousemen in the city of St. Louis during the year 1873, and received the tobacco sued for as warehousemen from Sterling Price & Co. on storage, and gave to Sterling Price & Co. warehouse receipts therefor as read in evidence, that were outstanding in the hands of George J. Davis as the assignee of Sterling Price & Co. when this suit was brought, and that said Sterling Price & Co., prior to this suit, had made advances to the plaintiffs on the said tobacco or on account thereof, which advances were unpaid at the time this suit was brought, and which advances were not.

paid or tendered by the plaintiffs to the defendants, or to said Davis, before the bringing of this suit, then the plaintiffs cannot recover in this action, and the court sitting as a jury should find a verdict for the defendants and assess the value of the property taken and the damages for the taking and detaining of the same for the time such property was taken or detained from defendants until the day of the trial of this cause."

3. "If the defendants were warehousemen in the city of St. Louis, in the year 1873, and received the tobacco sued for from Sterling Price & Co. on storage, as warehousemen, and gave said Sterling Price & Co. warehouse receipts therefor, as read in evidence, and if the court finds said warehouse receipts were outstanding when this suit was brought, in the hands of George J. Davis or any other person, then the plaintiffs cannot recover in this action ; and the court, sitting as a jury, should find a verdict for the defendants and assess the value of said tobacco taken, and the damages for the taking and detaining the same for the time such property was taken or detained from defendants until the day of the trial of this cause."

All of the foregoing declarations of law, asked by the defendants, were refused by the court, and the defendants excepted. There was a finding and judgment for the plaintiffs, which was affirmed at General Term, and defendants have brought the case here by writ of error.

In addition to a general denial of the plaintiffs' right of possession, and of the unlawful detention by defendants of the property in controversy, the answer of the defendants sets forth, as a special defense, the receipt by the defendants, as warehousemen, of the tobacco from Sterling Price & Co., and the issuance, to said firm, of warehouse receipts therefor —which were negotiable under the statute, and which were then held by one G. J. Davis, and on which suit had been brought by him, and that said firm had a lien for advances made, by them to plaintiffs, on said tobacco. These averments were, on motion of the plaintiffs, stricken out of the

answer, and it is now here contended by them, that, as no exception was saved by the defendants to this action of the court, that the matters therein alleged cannot be relied upon as a defense in this action. It is unnecessary to decide, in the present case, what defenses should be specially pleaded in an action for the claim and delivery of personal property under our statute. It is by no means clear that all of the matters stricken out were, if true, available as a defense, to the present defendants, to the extent claimed by them. There could be no assessment of the special interest of Sterling Price & Co., or their assignee, Davis, in a suit to which they were not parties. Nor did this defendant have any right to have the value of such special interest ascertained, or to receive the same under a judgment in his favor, if the plaintiffs, as general owners of the property, saw fit to pay the amount of their lien and take the property. While this could not be done, we do not wish to be understood as holding that the defendant may not show in bar of the plaintiffs' claim to the possession as general owner, that another person is entitled to the immediate and exclusive possession of the property claimed, and that the defendant holds possession under such person. Conceding that this may be done, and conceding further that such defense may be made without being specially pleaded, on which last point this court expresses no opinion now, still, it cannot avail the defendants in the present action, as it is clear, from the testimony, that there was no lien on the tobacco in favor of Sterling Price & Co., and, consequently. there could be none in favor of Davis, their voluntary assignee. It is plain that there was no lien for the freight paid by them. It was distinctly agreed between the parties that the freight was to be paid by Keller, and that the plaintiffs were not to be liable for any charges or expenses attending the shipment to St. Louis, and it appears further that Price and Co. received the tobacco with knowledge of that understanding, and acceded to it. The payment of freight by Price & Co., was, therefore, an advancement to Keller, and not to the plaintiffs.

It appears also, from the record, that Price & Co. remitted to the plaintiffs a larger sum of money than they received from Keller, and this excess is claimed to be an advance to plaintiffs, for which Price & Co. were entitled to a lien. Why any sum in excess of that received by them should have been remitted to plaintiffs, does not appear. The letters accompanying the remittances, and which would probably explain this matter, are not in the record. As the record now stands, it would seem to have resulted from some mistake in rendering an account of payments made by Keller under his contract of purchase. No request any where appears to have been made by the plaintiffs that any advance should be made to them, and the relations of the parties were not such as usually give rise to advances. Price & Co. were neither the agents nor the factors of the plaintiffs for the purpose of making a sale of the tobacco, and we cannot see that any payment was made by them to the plaintiffs for which they were entitled to be reimbursed out of the proceeds of the tobacco in their possession. The plaintiffs had already made their own contract of sale, and Price & Co. were their agents only to make delivery when the price agreed upon had been paid by Keller, for whom they were also acting as agents. If any mistake was made in the amount of the remittances made by them, they have a general claim against the plaintiffs for reimbursement, which may be enforced by their assignee, but it constitutes no lien on the tobacco in question. For these reasons the defendants' second instruction was properly refused. This instruction was also wrong in directing an assessment of the value of the property, instead of the defendants' special interest therein.

The third instruction was properly refused for the same reason. (Dilworth vs. McKelvy, 30 Mo., 149; Nelson vs. Luchtemeyer, 49 Mo., 56; Fallon vs. Manning, 35 Mo., 271.)

As to the remaining point, the right of the plaintiffs to recover the possession of the property in controversy, although the warehouse receipts were in the hands of the voluntary assignee of Price & Co., we think there can be no question.

These receipts gave the assignee no claim to the property as against the plaintiffs, and there is no lien in favor of Price & Co., or Davis, on the property for which they were issued. The plaintiffs ought not in this case to be required to recover the receipts before they can recover their property, and it would have been an easy matter for the defendants to have taken such steps at the trial as would have fully protected them, and they may yet do so. The statute in relation to warehouse receipts was not intended for such a case as this. We see no error in the instructions given for the plaintiffs.

Judgment affirmed. All the judges concur, except Judge Vories who is absent.