COLE & ABRAMS, Appellants, v. WABASH, ST. LOUIS AND PACIFIC RAILWAY COMPANY, Respondent.

| 21 | 443 |
| 96 | 257 |

Kansas City Court of Appeals, April 5, 1886.

1. REPLEVIN—DEMAND PRIOR TO SUIT—SECTION 1018, REVISED STATUTES, CONCERNING.—Under the provisions of section 1018, Revised Statutes, in actions as well for property as for money, it will not avail defendant that no demand was made prior to institution of suit, unless it is set up by way of defence and is accompanied with a tender of the amount due, and when *property* is tendered the damages for its detention. In the absence of such a statute, the rule of law is well established that where the plaintiff has delivered property to defendant, and defendant merely detains it, it is necessary for plaintiff first to make demand for it in order to maintain replevin. And in such case, a refusal, in order to excuse defendant, must be a qualified refusal, based upon reasonable grounds; it must not be absolute; otherwise he will be guilty of conversion, unless he can establish an adverse right to the immediate possession.

2. CONTRACT—BAILMENT—TITLE TO PROPERTY.—A bailee cannot avail himself of the title of a third person (though the person be the true owner), for the purpose of keeping the property for himself; not in any case where he has not yielded to the paramount title. But he can show that his bailor has parted with his title.

3. —— COMMON CARRIER—DUTIES OF—CASE ADJUDGED.—Section 1018, Revised Statutes, does not apply to the instance of a carrier of goods under circumstances like this. It contemplates an absolute and unconditional tender of the property sued for. It is the prime duty of the carrier to deliver the goods to the consignee, but if he deliver to the wrong party he does so at his peril, and until demand be made by the rightful party, the carrier is not in default. But the record in this case, does not show that defendant's refusal was a *qualified* refusal. *Per Philips, P. J., and Ellison, J., in separate opinion concurring in the result.*

APPEAL from Jackson Circuit Court, HON. TURNER A. GILL, Judge.

*Reversed and remanded.*

Statement of case by the court.

This suit was begun before a justice of the peace to

recover the possession of three cases of leaf tobacco, which had been shipped by plaintiffs from Erie, Pennsylvania, to M. F. Troxel. No bond was given and the defendant retained possession of the property. The case, on appeal to the circuit court, was tried by the court sitting a as jury.

In the absence of a counter abstract of the record by the defendant, we shall assume that the abstract of the record presented by the plaintiff, appellant, is correct. From that abstract of the record it appears that the testimony in the case, was as follows :

For the plaintiffs, plaintiff Cole testified : "We came to Kansas City about the first of April, 1883, from Erie, Pennsylvania. Before departing from Erie we shipped three cases or boxes of leaf tobacco, consigned to 'M. F. Troxel.' We shipped our tobacco in the name of 'M. F. Troxel' for the purpose of preventing a creditor from attaching it. We were in debt to a party in Erie, named Waxelbaum. There was at the time, a party in Erie who formerly worked for us, whose name was 'M. F. Troxel;' but he never had any right to the possession of or any ownership or title to the tobacco. At Kansas City I got a postal card from the postoffice, addressed to 'M. F. Troxel,' sent by the Wabash railroad, and announcing the arrival of the tobacco. We gave the card to the transfer company, with instructions to get the tobacco for us, but the railroad company refused to deliver it. We owed the party, Waxelbaum, of Erie, fifteen dollars. He claimed and demanded of us one hundred dollars. After we left Erie, Waxelbaum attached some tobacco we had sold, but which had not been removed from our old stand. In order to save the party to whom we sold the tobacco attached, expense and trouble, we sent Waxelbaum the bill of lading for the leaf tobacco we had shipped, that he might release the attachment. This he refused to do, and also refused to return us the bill of lading. The bill of lading we sent Waxelbaum was not endorsed in any manner by

any person. The leaf tobacco we shipped, and for by us which this suit was brought to recover, was bought on time, for which we gave our notes. They are not yet due."

And for the plaintiffs H. Worthington also testified. By him a demand for the property only was shown.

On the part of the defendant there were two witnesses, who testified as follows:

T. V. Bryant: "Am an attorney. I received a claim against the plaintiffs from Philadelphia parties, and also the bill of lading which the plaintiffs sent to Waxelbaum, of Erie, Pennsylvania, and have the same now. (Produced and read). Neither Waxelbaum nor the vendors of the tobacco sued for have instituted any proceedings in relation thereto against the defendant railroad. After I received the bill of lading, the railroad company refused to deliver the tobacco to me."

E. W. Zeg: "Am cashier for the Wabash railroad at Kansas City. Some party demanded the possession of the tobacco in controversy; but said he was not Troxel, and had not the bill of lading. The tobacco is now in the Kansas City storage house."

The plaintiffs asked and the court refused to give the following declaration of law:

"That on the pleadings and the evidence, the plaintiffs are entitled to a judgment."

The court gave for the defendant the following declaration of law:

"The court is instructed that under the pleadings and evidence in this case plaintiffs cannot recover."

ALDERSON & YOUNG, for the appellants.

I. The appellants are the undisputed owners of the property sued for. "Ownership of chattels usually draws to it the right of possession. Proof of ownership would warrant the inference that the owner was entitled to the possession." Wells on Replevin, sect. 39.

II. *Section 559*, Revised Statutes, cannot avail

defendant. The *manual* delivery of the bill of lading by the appellants did not transfer the title to or even the right to the possession of the property described therein ; or, at the most, an equitable title, and it is a maxim that the legal title (still retained by appellants), will prevail over the equitable. *Heyland v. Badger*, 35 Cal. 404 ; *Reese v. Harris*, 27 Ala. 306 ; Wells on Replevin, sect. 105.

III. A carrier who acquires possession from a shipper cannot defend in an action of replevin by showing title in a third party. Wells on Replevin, sect. 110.

IV. *Section 562*, Revised Statutes, provides that it is an absolute protection to a common carrier that the property was taken from it by replevin, attachment, or other process of law. *Railroad v. Yoke*, 51 Ind. 181 ; *Bliven v. Railroad*, 36 N. Y. 403 ; *The Idaho Case*, 93 U. S. 575 ; *Jones v. Evans*, 62 Mo. 375.

V. The law permits an action of replevin, though the property is not taken from the defendant. The *action still* is purely and only one in replevin. Wells on Replevin, sects. 40, 145, 146, 151, 396 ; *Eads v. Stephens*, 65 Mo. 90.

JOHN W. BEEBE, for the respondent.

I. Defendant was justified in refusing to deliver the property to plaintiffs for two reasons. 1. They failed to surrender the original bill of lading. 2. There was no proper identification of the parties claiming the goods.

II. The question is, were the plaintiffs entitled to the immediate possession of the property as against the defendant? And that question depends upon the additional one, whether defendant's refusal to deliver was reasonable under the circumstances. Rev. Stat. p. 87, "Of Bills of Lading;" Hutch. on Carriers, 120, and cases cited ; *E., W. I. Dock Co. v. G. Mills & Co.*, 7 House of Lords Cases, 591.

HALL, J.—The single question presented by the

plaintiffs' abstract of the record and the briefs of both parties, for our determination is, as to the action of the court in refusing the one declaration of law and in giving the other, under the above evidence.

It was error for the court to give the declaration of law, in the nature of a demurrer, to the evidence, under the facts in proof which were admitted by the declaration of law to be true. The question was, were the plaintiffs entitled to the immediate possession of the property, at the institution of this suit against the defendant? The defendant contends that this question depended upon the other question, was the defendant's refusal to deliver the property to the plaintiffs reasonable under the circumstances?

Whether the defendant's contention is well founded depends, first, upon whether any demand by plaintiffs upon the defendant for the property prior to the institution of this suit was necessary; and, second, if such demand was necessary, upon the character of defendant's refusal, that is, was it absolute or qualified.

## I.

Section 1018, Revised Statutes, provides: "It shall not, hereafter, be available to a party, as an objection, that no demand for the subject matter of a suit was made prior to its institution, unless it is expressly set up by way of defence in the answer or replication, and is, also, accompanied with a tender of the amount that is due; in which case, if the plaintiff will further prosecute his suit, and shall not recover a greater sum than is tendered, he shall pay all costs. This provision shall be applicable as well to actions for property as for money; when property is tendered, the damages for its detention, if any, shall also be tendered." Under this statute no demand by plaintiffs of defendant for the property, prior to the institution of this suit, was necessary. *Battel v. Crawford*, 59 Mo. 217; *Raithel v. Dezetter*, 43 Mo. 145; *Lee v. Casey*, 39 Mo. 383. As no

demand was necessary, so, of course, no refusal of any kind by the defendant, prior to the institution of this suit, was necessary, in order to enable plaintiffs to maintain this suit.

## II.

In the absence of such a statute as the one above set out, the rule of law is well established that, where the plaintiff has delivered property to the defendant, and the defendant merely detains it, it is necessary for the plaintiff to first make a demand of defendant for the property in order to maintain an action of replevin for the recovery of it. And if the defendant should in such case make a qualified refusal to deliver up the property upon grounds which are reasonable, he would not be guilty of conversion, and the plaintiff could not, without a compliance with the reasonable grounds of the refusal, maintain replevin for the recovery of the property. But the refusal, in order for it to excuse the defendant, must be a qualified refusal, based upon reasonable grounds; it must not be absolute. In all cases an absolute refusal by the defendant would constitute conversion, where the plaintiff was entitled to the immediate possession of the property. In Philips on Evidence, it is said: "But where the defendant is proved to be in the possession of the plaintiff's goods, and on their being demanded, gives an unqualified refusal, he will be guilty of a tortious conversion, unless he can establish an adverse right to the immediate possession. 3 Phillips on Evidence, 540–542; see, also, to the same effect, *Rogers v. Weir*, 34 N. Y. 469; *Ball v. Liney*, 48 N. Y. 12; Wells on Replevin, sect. 380.

As under our statute no demand or refusal was necessary, and as the refusal made by defendant to the plaintiffs' demand was absolute, we repeat that the only question in this case is, were the plaintiffs entitled to the immediate possession of the property at the institution of this suit? And we hold that the contention of defendant is not well made.

Between the plaintiffs and the defendant the relation of bailor and bailee existed. As between them the property was the plaintiffs'.   "A bailee cannot avail himself of the title of a third person (though the person be the true owner) for the purpose of keeping the property for himself ; not in any case where he has not yielded to the paramount title."   *The Idaho Case*, 93 U. S. 575 ; *Pulliam v. Burlingame*, 81 Mo. 119.   Of course, the bailee can show that his bailor has parted with his title.   *Pulliam v. Burlingame, supra ; Higgins v. Turner*, 61 Mo. 249.   And an actual delivery of the property by the bailee to the true owner, upon his demand therefor, will constitute a valid defence against the claim of the bailor.   *The Idaho Case, supra ; Pulliam v. Burlingame, supra ; Matheny v. Mason*, 73 Mo. 677.   But under the evidence in this case, neither had the plaintiffs parted with their title, nor had the defendant delivered the property to the true owner, nor had the defendant yielded to the paramount title of a third person. It is not necessary for us to decide whether or not a bill of lading can be made, under section 559, Revised Statutes, transferable except " by endorsement in writing thereon." Under the evidence in this case, the plaintiffs sent the bill of lading to Waxelbaum to be held by him as collateral security for their debt to him, upon condition that he would release a certain attachment in Pennsylvania, in which they were interested, and with this condition Waxelbaum did not comply.   The bill of lading was, then, not his for any purpose, and should have  been returned by him to the plaintiffs, but this he refused to do.

As to the question whether the plaintiffs can recover the possession of the property, although the bill of lading is in the hands of Waxelbaum, we do not think there is any doubt.   Waxelbaum had no right to the bill of lading ; the possession of it, under the facts in proof, gave him no claim to the property ; and he had no lien on the property.   "The plaintiffs ought not in this case to be

required to recover the bill of lading before they can recover their property." *Jones et al. v. Evans et al.*, 62 Mo. 382. Section 559, Revised Statutes, was not intended for such a case as this. *Id.*

Judgment reversed and cause remanded. The other judges concur in the result in a separate opinion.

SEPARATE OPINION OF PHILIPS AND ELLISON, JJ. We concur in the result of the foregoing opinion, for the reason that the record, as presented in the abstract, does not show that defendant's refusal was a qualified refusal. But we are of opinion that section 1018, Revised Statutes, does not apply to the instance of a carrier of goods under circumstances like this. It is the prime duty of the carrier to deliver the goods to the consignee. If the carrier deliver the goods to the wrong party, he does so at his peril; therefore, the law is that the carrier has the right, for his necessary protection, to demand the bill of lading before delivery, or, in case of demand by the rightful owner, to require reasonable evidence of his identity. Until demand be made by the rightful party the carrier is not in default, for in holding the goods until applied for by him to whom he has undertaken by his contract to deliver them, he is only doing what the consignor, the shipper, has authorized him to do.

In refusing to deliver, without some evidence of identification by the demandant, he is but doing that which the law allows for his reasonable and necessary protection. It is evident to our minds that said section of the statute can have no application to this case, for the obvious reason that it contemplates an absolute and unconditional tender of the property sued for. Suppose the defendant, when sued without a demand, and is without knowledge or information as to whether plaintiff is the owner, comes into court, and, in order to protect himself against payment of costs, makes tender of the goods. This admits the plaintiffs' ownership. It after-

wards transpires that another party was the owner, who sues the defendant. He must recover, for the recovery against the defendant in the first suit would be no defence to the latter. The defendant surrendered the property without even a struggle, merely to escape costs. Until the consignee or owner makes application for the goods, the carrier is not in default ; and even where either does make demand, the law is that the carrier has the right to request reasonable proof of identification. And, therefore, until demand be made by the rightful party, the carrier can never be placed in default, nor subjected to an action for wrongful detention.

On the re-trial of this case, therefore, if it appears from the evidence that no demand was in fact made by the plaintiff on the defendant for the goods before the institution of this suit he cannot recover. If he did make such demand, and the defendant declined to surrender the goods in good faith on the ground that the defendant was unknown to the agent, and plaintiffs failed to offer any proof of identification, the refusal was a qualified and reasonable one, and the plaintiffs ought not to recover.