Nanson v. Jacob.

---

NANSON et al., *Appellants*, v. JACOB et al.

1. **Common Carrier**: CONVERSION, WHEN NOT GUILTY OF. A mere bailee, whether a common carrier or otherwise, is not guilty of a conversion, although he receive property from one not rightfully entitled to possession, and acting as a mere conduit, deliver it in pursuance of the bailment, if this be done before notice of the rights of the real owner.

2. ———— : NOTICE OF RIGHTS OF OWNER. But if he has such notice of the rights of the owner his *status* is changed and he delivers possession at his peril.

| | |
|---|---|
| 93 | 331 |
| 36a | 422 |
| 38a | 87 |
| 93 | 331 |
| 40a | 499 |
| 93 | 331 |
| 42a | 163 |
| 42a | 442 |
| 93 | 331 |
| 105 | 491 |
| 93 | 331 |
| 106 | 525 |
| 46a | 420 |
| 93 | 331 |
| 51a | 318 |
| 52a | 210 |
| 52a | 414 |
| 53a | 173 |
| 93 | 391 |
| 117 | 519 |
| 93 | 331 |
| 125 | 180 |
| 59a | 661 |
| 60a | 26 |
| 93 | 331 |
| 126 | 349 |
| 62a | 575 |
| 93 | 331 |
| 65a | 13 |
| 93 | 331 |
| 142 | 33 |

| 93 | 331 |
| 76a | 335 |
| 79a | 522 |
| 93 | 331 |
| 81a | 310 |
| 93 | 331 |
| 84a | 599 |
| 93 | 331 |
| 87a | 337 |
| 93 | 331 |
| 162 | 495 |
| 93 | 331 |
| 164 | 334 |
| 93 | 331 |
| 90a | 118 |
| 93 | 331 |
| 92a | 2331 |
| 93 | 331 |
| 94a | 7604 |
| 93 | 331 |
| 175 | 329 |
| 96a | 4257 |

3. ——— : ——— : STATUᴛE. Nor is the rule, that the common carrier cannot be held responsible for conversion before having notice of the rights of the real owner, affected or changed by Revised Statutes, section 1018.

4. ——— : ——— : ———. The provisions of said statute were not intended to create a constructive conversion. Nor do they apply to actions of trover and conversion. (*Raithel v. Dezetter*, 43 Mo. 145, and *Battel v. Crawford*, 59 Mo. 215, *overruled*).

5. **Judgment.** An allowance of a demand by an assignee for the benefit of creditors is a judgment.

6. **Election.** One who proves up before an assignee for benefit of creditors a claim for goods converted by the assignor, and accepts the provisions of the assignment, cannot afterwards sue for their conversion.

7. ———. Where there is an election between inconsistent remedies, a person will be confined to the one which he first prefers and adopts.

8. **Evidence.** Where the answer denies the assignment of the cause of action, on which plaintiff sues, and that he is the real party in interest, it is error to exclude evidence offered by defendant in support of the issues so tendered by his answer.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Albert Arnstein* for appellants.

(1) Defendants cannot object to a want of demand before suit, unless they set up such defence in their answers, and make a tender. R. S., secs. 1018, 1009 ; *Battel v. Crawford*, 59 Mo. 215 ; *Raithel v. Dezetter*, 43 Mo. 145 ; *Hard v. Milligan*, 72 N. Y. 427 ; *Ludwig v. Meyer*, 5 Watts & S. [Pa.] 435. (2) Where goods are shipped to the order of the consignor, and bill of lading taken in his name, the title to the property remains in him, notwithstanding the fact that the name of the prospective purchaser appears on the packages. Benjamin on Sales, sec. 382 ; *Libby v. Ingalls*, 124 Mass. 503 ; *Newcomb v. Railroad*, 115 Mass. 230 ; *McEwen v. Railroad*, 33 Ind. 368 ; *Sanguer v. Railroad*, 32 Eng. Law & Eq. 338 ; *Stollenwuck v. Thatcher*, 115 Mass.

224; *Pattison v. Culton*, 33 Ind. 243. (3) The bill of lading is the representative of the goods; its possession and ownership is constructive possession of the goods, and entitles the *bona-fide* holder to the actual custody of the same. Benjamin on Sales, secs. 813, 864; *Bank v. Shaw*, 1 Law & Eq. Rep. 591. (4) Where goods are sold, to be delivered on payment being made, paying is a condition precedent to the vesting of title, and if the purchaser exercises rights of ownership over the property without having paid for it, he is a trespasser, the same as any stranger to the transaction would be, and is liable in an action of trover for their conversion. Benjamin on Sales, sec. 320, and authorities there cited; *Parmlee v. Catherwood*, 36 Mo. 478; *Little v. Page*, 44 Mo. 412; *Griffin v. Pugh*, 44 Mo. 326; *Ridgway v. Kennedy*, 52 Mo. 24. (5) Jacob having no right to the hops until he paid for them, his order directing the transfer company to deliver them does not exonerate it from liability for the conversion. *Yost v. Stout*, 4 Cold. 205; *Lublock v. Inglis*, 1 Stark. 104; *Hazleton v. Weeks*, 49 Wis. 661; *Stephens' Assignee v. Elwall*, 4 Maule & Sel. 258; *Levi v. Booth*, 58 Md. 305. (6) Where a carrier makes an erroneous delivery, either by reason of fraud practiced on him, or by an innocent mistake, he is responsible to the rightful owner, and the wrongful delivery is treated as a conversion. Hutchinson on Carriers, secs. 130, 350; Redfield on Carriers, secs. 103, 318; *Libby v. Ingalls*, 124 Mass. 503; *Newcomb v. Railroad*, 115 Mass. 230; 2 Benjamin on Sales, ch. 6; *The Thames*, 14 Wall. 98. (7) By the terms of the bill of lading the transfer company, by transporting the goods, became a party to the contract therein set forth, and is, therefore, chargeable with a knowledge of its contents, and bound by the contract obligations therein contained. *Holliday v. Railroad*, 74 Mo. 159; R. S., sec. 598. (8) It was the duty of the transfer company to demand the bill of lading before it made

delivery of the goods, and its omission so to do was negligence. R. S., sec. 559 ; Hutchinson on Carriers, sec. 130 ; *Bass v. Glover*, 63 Ga. 745 ; *Finn v. Railroad*, 102 Mass. 283. . (9) The fact of presenting the claim in trover for allowance before the assignee of Jacob was not a waiver of the tort. The assignee's "understanding" cannot affect our rights. If we did not intend to waive the tort, nor do anything to contradict that intention, we cannot be deemed to have waived it. That issue was fairly presented to the jury and its verdict had upon it.

*S. M. Breckenridge* and *M. F. Watts* for respondent, the St. Louis Transfer Company.

(1) The demurrer to the evidence should have been sustained. No demand was alleged to have been made of the transfer company. *Smith v. Kennet*, 18 Mo. 154. This is not an action for the recovery of money or property within the meaning of Revised Statutes, section 1018. (2) The instructions given for the plaintiff are erroneous. *Fouldes v. Willoughby*, 8 M. & W. 540. In order to constitute a conversion, there must be an intent to take to himself the property or the goods and dispossess plaintiffs of it. *Loeing v. Mulcahy*, 3 Allen, 575 ; *Burroughs v. Bayne*, 5 M. & W. 296 ; *Koch v. Branch*, 44 Mo. 502 ; *Greenway v. Fischer*, 1 C. & P. 190 ; *McCormick v. Railroad*, 49 N. Y. 303 ; *Hiort v. Batt*, 9 Ex. [Law Rep.] 86 ; 3 Robinson's Prac., 462 ; *Strickland v. Barret*, 20 Pick. 645. Trover will not lie against a common carrier unless there has been an actual conversion, or a demand and refusal to deliver the goods. *Dwight v. Brewster*, 1 Pick. 53 ; *Metcalf v. McLaughlin*, 122 Mass. 84 ; *Hill v. Snell*, 104 Mass. 173 ; Cooley on Torts, 456. (4) Proving up the claim before the assignee was a waiver of any conversion, had there been any. *Brewer v. Sparrow*, 7 B. & C. 310 ; *Lythgoe v. Vernon*, 5 H. & N. 179 ; *Beloit v. Beale*, 34

N. Y. 473; *Kennedy v. Thorp*, 51 N. Y. 176; *Rodermund v. Clark*, 46 N. Y. 354; *Field v. Bland*, 50 How. [N. Y.] 85. (5) Defendants' answer denied the assignment of the cause of action, and that appellants were the real parties in interest. The plaintiffs should have made proof of the facts so denied. (6) There was error in directing the court to find for or against both defendants. Pomeroy's Civil Rem. 308; *Mitchell v. Williams*, 4 Hill, 13; *Forbes v. Marsh*, 15 Conn. 384.

SHERWOOD, J.—Action in trover, brought against Robert Jacob, the St. Louis Transfer Company, and the Wabash, St. Louis & Pacific Railway Company, for the alleged conversion of a number of bales of hops, the property of plaintiffs' assignors.

The petition states, in substance, that S. and F. Uhlmann were, on the sixteenth day of December, 1879, the owners, and in possession, of a certain number of bales of hops; that, on that day, they casually lost the same out of their possession; that, on the same day, they came into the possession, by finding, of defendants, who refused to deliver them to said S. and F. Uhlmann, but converted the same to their own use; that, after the said cause of action accrued in favor of the said Uhlmanns, they did, on the fifteenth day of January, 1880, assign the same to plaintiffs. The defendants answered separately, the defendant Jacob denying all the allegations of the petition, and alleging as his defence, in substance, that he had bought the hops of the Uhlmanns; that, after the purchase, he made an assignment, for the benefit of his creditors; that plaintiffs, claiming to be the assignees of Uhlmanns, in the contract of sale of the hops, accepted the provisions of the assignment, and proved up their claim before the assignee, and in payment of the claims the assignee had transferred to plaintiff certain claims and choses in action; that the assignee had paid part of the claim in

money; and the administration of the effects of his estate was not yet closed.

The defendant, the St. Louis Transfer Company, denied all the allegations of the petition, and alleged that it was a common carrier, engaged in the transportation, by wagons, of freight from East St. Louis to St. Louis; that on the day of the alleged conversion, defendant, Jacob, represented to it that he had three carloads of hops in East St. Louis, which he desired this defendant to bring for him to the city of St. Louis, and at the same time showing this defendant written and printed notices from the defendant railway company to him, notifying him of the arrival of the hops in East St. Louis, consigned to him, and requiring him to call and remove the same; that thereupon this defendant agreed with Jacob for a certain price to bring the hops for him to St. Louis; that Jacob endorsed his order on said notices from the railway company, requesting the railway company to deliver the hops to this defendant; that said notices disclosed no claim of any other person to said hops, and, on the contrary thereof, warned defendant Jacob that unless said hops were removed within the time by the notices indicated, i. e., twenty-four hours, he would be required to pay a penalty for delay in the shape of an increased charge to the carrier, the railroad company, for warehouse fees; that, upon presentation of this order of defendant Jacob to the railway company, the hops were delivered to this defendant and by it delivered to Jacob, in St. Louis; that all of its acts were done in good faith and in accordance with its custom, and the custom and duty of common carriers; that it exercised no act of ownership over said hops, and did not in any manner convert the hops to its own use or the use of any one; that no demand had ever been made upon it by plaintiffs for the hops or the value thereof; denied the assignment to plaintiff, and alleged the sale of the hops to Jacob, as set forth in the answer of Jacob.

The plaintiffs dismissed their cause of action as to the Wabash, St. Louis & Pacific Railway Company.

The facts in this case are briefly as follows: On the twenty-fourth day of November, 1879, said S. and F. Uhlmann, assignors of plaintiffs, dealers in hops in New York City, consigned to Robert Jacob, of St. Louis, a lot of hops, part of which are involved in this controversy. The hops were shipped by the Red Line Transit Company, of which the Wabash, St. Louis & Pacific Railroad Company was the terminal carrier at St. Louis and East St. Louis, and a bill of lading given therefor, by which it appeared that the hops were consigned to the order of S. and F. Uhlmann. A draft was drawn for the amount of the invoice of the hops, attached to this bill of lading, and sent to the Bank of Commerce, of St. Louis, with instructions to surrender the bill of lading to Jacob on payment of the draft; on each bale of hops there was a tag bearing the number and address, R. Jacob & Co. The hops reached East St. Louis over the Red Line Transit Company, and were stored at the depot of the Wabash Railroad Company. After remaining there a day or so, the Wabash Railroad Company, the terminal carrier at St. Louis, and East St. Louis, of the line bringing the hops, addressed to R. Jacob & Company a notice, stating that the hops consigned to them had been received at the depot in East St. Louis, stating the amount of charges on the same, and that if the goods were not taken away and charges paid in twenty-four hours, the hops would be stored at their risk and expense. The notice also stated that the goods would not be delivered without a written order from the consignee (Jacob); and at the bottom of this notice was a blank order to be filled out by Jacob, directing the Wabash Railroad Company to deliver the hops to the person therein named. Jacob received this notice, carried the same to Fitzgibbon, the agent of defendant, the St. Louis Transfer Company,

handed him a check for the amount of the railroad charges, and filled out the blank order at the bottom of the notice, directing the railroad company to deliver the hops to defendant.

The defendant presented Jacob's check for the charges, and his order to the Wabash Railroad Company, and received from it the hops, which defendant then delivered according to Jacob's direction. This all occurred about the sixteenth of December, 1879, and in the meantime, the bill of lading had been received by the Bank of Commerce, attached to the draft, and the draft was unpaid, and the bill of lading was still in the possession of the bank when Jacob received the hops. About two weeks after receiving the hops, Jacob made an assignment, for the benefit of his creditors, to Hugo Muench, and on the fifteenth of January, 1880, A. and F. Uhlmann, the original owners of the hops, executed and delivered to plaintiffs an instrument in writing, purporting to assign for value to plaintiffs all their right and interest in and to the hops, and also any claim or dividend they might have by reason of the conversion of the hops against any person. The plaintiffs proved up a claim against the assigned estate of Jacob before Muench, Jacob's assignee, on account of these hops, but whether for conversion or as for a sale, there was some dispute, the assignee stating that he refused to allow the claim as for conversion, and so stated to plaintiffs' attorney when the claim was first presented; but the official record of the assignee shows positively that he allowed the claim as *on account*, and that plaintiffs' attorney, when finally presenting the claim for allowance, and having it allowed, knew that the assignee had stated, at the time of his first presentation to him, that he could not allow the claim on the basis of a conversion, yet was silent as to this point, though the assignee had given no hint of any change of opinion on that question. Subsequently, several payments were made by the assignee to appel-

lants on account of the allowance, and when this case was tried and verdict found, the assigned estate of Jacob was not yet settled, and it was still undetermined what additional payments would be made on account of the allowance. At the trial the defendant transfer company attempted to show by one of the plaintiffs that they were not the real parties in interest, but the court excluded the testimony, holding that the paper purporting to assign the interest of the Uhlmanns to plaintiffs was conclusive. Defendant transfer company offered to show, as fully appears in the record, that, at the time of receiving the goods from the Wabash Railway Company, it had no knowledge of the fact that a bill of lading had been issued to the order of the Uhlmanns, or any one else; that it received the goods from the railroad company, without any knowledge of the fact that Jacob was not the consignee, in the regular course of its business as a common carrier; but all this was excluded by the court as immaterial, and to the ruling of the court said defendant duly excepted.

I. The demurrer to the evidence of the plaintiffs should have prevailed. A mere bailee, whether common carrier, or otherwise, is guilty of no conversion, though he receive property from one not rightfully entitled to possession, and, acting as a mere conduit, deliver it in pursuance of the bailment, if this is done before notice of the rights of the real owner. On the other hand if he has such notice, his *status* is altogether altered and he acts at his peril. Cooley on Torts, 456. This distinction between acting with or without notice, in such circumstances, is fully and pointedly recognized in *Dusky v. Rudder*, 80 Mo. 400. Common carriers, by reason of the nature of their business, which imperatively requires them to receive and forward goods, when tendered in the usual course of their business, have long formed an exception to the stringency of general rules, in respect to what constitutes, in similar cases, a conversion. The

authorities on this point are abundant. *Greenway v. Fisher*, 1 C. & P. 190 ; *Ross v. Johnson*, 5 Burrow, 2825 ; *Fowler v. Hollins*, 7 L. R. Q. S. 616 ; *Hiort v. Bott*, L. R. 9 Exch. 86 ; *Burditt v. Hunt*, 25 Me. 419 ; *Smith v. Colby*, 67 Me. 169 ; *Strickland v. Barrett*, 20 Pick. 415 ; *Loring v. Mulcahy*, 3 Allen, 575 ; *Fouldes v. Willoughby*, 8 Mees. & W. 540 ; *Waring v. Railroad*, 76 Pa. St. 491. When goods come into the possession of a person by delivery or by finding, he is not liable in trover for them without proof of a tortious act. *Wilbraham v. Snow*, 2 Sanders, 47 ; *Mulgrave v. Ogden*, 1 Cro. Eliz. 219. And where a person receives goods by delivery from one whom he is entitled to regard as the owner, and having so received them, conveys them to another, to whom they are sent, he does no tortious act. *Parker v. Godine*, 2 Strange, 813.

"A conversion may be proved in three ways : (1) By a tortious taking ; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner ; (3) by a refusal to give up possession to the owner on demand." 3 Rob. Prac. 462, and cas. cit. "*The idea of property is of the essence of a conversion.*" 3 Rob. Prac. 459. This case presents none of the elements of a conversion on the part of the transfer company. It was engaged in its ordinary duty of a common carrier. It received the goods from the Wabash Railway Company, then in the lawful possession of the goods, and without notice of the rights of the real owner, delivered those goods in pursuance of the bailment, thus bringing this case fully within the rule laid down by Cooley and other authorities cited. Here no demand or refusal was proved, so as to terminate the lawful holding and transform it into a wrongful one.

II. But it is urged that in this case no demand was necessary according to the terms of the statute and the rulings made thereon. The statute on the.

subject is as follows: "It shall not hereafter be available to a party, as an objection, that no demand for the subject-matter of a suit was made prior to its institution, unless it is expressly set up by way of defence in the answer or replication, and is, also, accompanied with a tender of the amount that is due; in which case, if the plaintiff will further prosecute his suit, and shall not recover a greater sum than is tendered, he shall pay all costs. This provision shall be applicable as well to actions for property as for money; when property is tendered, the damages for its detention, if any, shall also be tendered." R. S., 1879, sec. 1018. This section is found under the appropriate title of "*Costs in Civil Cases.*"

The rulings on that statute are as follows: In *Westcoat v. De Montreville*, 30 Mo. 252, the action was one for a sum of money, an ordinary action of debt. The same may be said of the case of *Lee v. Casey*, 39 Mo. 383, where the suit was for the sum of two hundred and fifty dollars. In delivering the opinion, however, it was said that the action was not one of trover, and if it were, etc., citing the statute. The utterance in that case was, therefore, wholly *obiter*. *Reed v. Mullins*, 43 Mo. 306, was an ordinary action for a sum of money, and the statute and the case of *Westcoat v. De Montreville*, *supra*, were cited.

*Raithel v. Dezetter*, 43 Mo. 145, is the first case in our reports where the conversion of personal property was the *gravamen* of the action, where the statute referred to was invoked. Bliss, J., in delivering the opinion of the court, evidently felt the force of the absurdity of treating an *innocent act as a wrongful one;* for he says: "The removal of the property by the defendant from the smoke-house for storage elsewhere, when he had equal rights with the plaintiff to the use of the smoke-house, could not have been in itself tortious, especially when we consider that the proper use of the

smoke-house was for curing meat—not for storage. Having removed it, as hypothetically stated in these instructions, his possession can only become wrongful by exercising acts of ownership over it, or by holding it against the will of the owner. How can he know the will of the owner without some manifestation of that will, without a demand, or something equivalent to it? Moreover, the law requires a demand, when the original possession was innocent, as evidence of conversion. But, by the statute, the want of a demand 'shall not be available to a party' unless it is set up and tender made. The defendant then is deprived of the evidence of his innocent holding. He is prohibited, under the pleadings, from showing that such holding was never terminated, that it never became wrongful by demand and refusal. * * * The removal of the property, as there supposed, is not a conversion. But what benefit would this statement to the jury have been to the defendant, when the evidence of his innocent holding is unavailable to him? He took it from the plaintiff's possession under circumstances that did not amount to a conversion.''

*Fisher v. City of Louis*, 44 Mo. 482, was an ordinary action for recovery of the contract price for work done. *Battel v. Crawford*, 59 Mo. 215, was an action for the conversion of a sum of money. In that case, conversion was in terms alleged, so that no necessity existed for alluding to the statute, and, therefore, that case cannot be regarded as authority *pro* or *con.* for the proper construction of the statute, so that there is but *one case* in our reports, and that one delivered with much hesitation, which supports the contention of the plaintiffs. I have never thought that the statute applied to an action of trover and conversion. I have never thought that the legislature intended it to be thus applied. I have understood from an old and able lawyer, now deceased, who was thoroughly conversant with the

history of legislation in this state, that the statute in question was passed with reference to what were known as *property notes*. And the statute might perhaps apply, also, to the case of a maker or acceptor of a note or bill, where no presentment or demand is made at the specified place, and where such an omission or neglect is a matter of defence on the part of the acceptor or maker, either to escape altogether, or at least to the extent of damages and costs. 2 Greenl. Evid. [14 Ed.] sec. 180.

But I do not believe that the legislature ever intended, even conceding the power on its part, to convert an *innocent and lawful act into a tortious one.* I do not believe that it lies within the compass and bounds of legitimate legislation, by an act retroactive in its nature, to make that which was originally innocent and lawful assume the hue and complexion of one originally wrongful. In a word, the legislature did not design, by that statute, to create a *constructive conversion.* Although our civil code has made many sweeping changes in the forms of actions, yet it has not, nor can it, change the substantial elements which go to make up the basis, or cause, of an action. Again, the action of trover and conversion is one sounding in tort; the damages are unliquidated. The language of the statute is, "a tender of the amount that is *due*," thus plainly indicating *indebtedness* either in money or property. Besides, tender is not pleadable to a claim for unliquidated damages. 2 Chit. Plead (16 Am. Ed.) 470. *Dearle v. Barrett*, 2 A. & E. 82. For these reasons, I am of opinion that the cases of *Raithel v. Dezetter*, and *Battel v. Crawford, supra*, should no longer be followed.

III. And I do not believe that, in any event, the statute in question was intended to apply to *common carriers*. The section under discussion contemplates an unconditional tender of money, or property. Without a demand having been made upon him, a carrier is sued;

he is without any means of information whether plaintiff is the owner or not. He comes into court, and, if he would protect himself against the payment of costs, he must make tender of the money or property. This tender admits the plaintiff's ownership. If it should afterwards turn out that another party is the real owner of the money, etc., the judgment in the first action is no protection to the carrier in the second, he having surrendered the property without a struggle, purely in order to save costs. The carrier having acquired possession in the course of his public duty, and in a lawful manner, is not in default, while pursuing the terms of the bailment, until application is made to him by the owner or consignee of the goods. If this be true, then no action lies against him for a conversion until he is placed in default by failure to deliver upon proper demand. And this demand, in such circumstances made and proved, is a *condition precedent* to the plaintiff's recovery. Views similar to these were recently expressed in the case of *Cole v. Railroad*, 21 Mo. App. 443.

IV. There was error committed in regard to the allowance of the claim presented to the assignee of Jacob, in regard to the force and effect of said allowance. That allowance was, to all intents and purposes, *a judgment*, appealable from, as such, and conclusive, as such. *Eppright v. Kauffman*, 90 Mo. 25. The official record of the assignee shows positively that he refused to allow the claim on the basis of *a conversion*, but allowed it *as on account*. The record of the assignee also shows that Jacob was adjudged, by the assignee, entitled to a reduction of two and a half per cent. commission on the hops, and the claim was then allowed, *i. e.*, with such a deduction. And it was admitted on the trial that plaintiffs had received several thousand dollars on the allowed claim, and, at that time, the assigned estate of Jacob was still unsettled; and it did not appear what additional payment would be made on account of allowance.

In such circumstances as the foregoing, the conversion, if any had occurred, must be deemed as waived. Clearly, the plaintiffs could not have *two strings to their bow;* could not ratify the act of Jacob, on the one hand, by having their claim allowed in the ordinary way, with a deduction of commissions, and then, on the other hand, proceed as for a conversion. The two proceedings were utterly incompatible. The plaintiffs were put upon their election to choose which remedy they would pursue, and having elected to go before the assignee, as aforesaid, were necessarily precluded from any other or further remedy.

Any other theory announces this remarkable result, that Jacob is allowed a commission of two and a half per cent. on the value of hops he is alleged to have converted tortiously. In *Brewer v. Sparrow,* 17 Barn. & Cress. 310, the assignees of a bankrupt received of a party who had taken possession of the stock of the bankrupt, after a commission in bankruptcy had received part of the money the trespasser had received for the sale, and sued him in trover for the balance. Bayley, J., said : "I am of the opinion that the plaintiffs * * * have affirmed the acts done by the defendant with reference to the disposition of the goods of the bankrupt, for they have accepted from him the balance of the account." Holyrod, J., said : "By doing so (receiving part of the proceeds) they (plaintiffs) at all events either recognized him as their agent, in the sale of the bankrupt's goods, or they must have received the amount of the balance as a satisfaction for the wrongful act done by the defendant. If they have treated him as their agent, they cannot afterwards treat him as a wrong-doer and maintain trover. If, on the other hand, they accepted the balance of the account as a satisfaction of the wrongful act, the acceptance of that sum is an answer to the action."

The case of *Lythgoe v. Vernon,* 5 Hurls. & Nor. 179, was also an action for the conversion, by defendant,

of some hops. Defendants paid plaintiffs part of the proceeds, which plaintiffs accepted, and then sued the defendants for the entire value of the hops. It was held, that if the owner of goods, after a tortious sale of them, waives the conversion, and claims the proceeds of the sale, part of which are paid to him, he cannot afterwards treat the seller as a wrong-doer, and maintain trover against him.

"Where a vendor, who has been defrauded in the sale of his goods, proceeds to judgment against a vendee upon the contract of sale, after being fully apprised of the fraud, his election is determined, and he cannot afterwards follow the goods, or the proceeds thereof, into the hands of third persons, on the ground of fraud." *Bank of Beloit v. Beale*, 34 N. Y. 473. In this case, and in *Kennedy v. Thorp*, 51 N. Y. 176, and *Rodermund v. Clark*, 46 N. Y. 354, it is declared: "Where there exists an election between inconsistent remedies, the party is confined to the remedy which he first prefers and adopts." In *Field v. Bland*, 81 N. Y. 240, it is held that, "where, after goods had gone into possession of defendant, plaintiff accepted confession of judgment for the value thereof, and he collected part thereof, he is held to have elected to treat the goods as the property of defendant, and he cannot afterwards change his grounds to that of wrongful taking and conversion." In an analogous case in this court, where the service on a defendant was by order of publication, a personal judgment rendered, and his land sold, it was ruled that he, knowing all the facts, could not accept the surplus of the proceeds of the sheriff's sale, without affirming the sale, and thus placing himself in a place where he could not question its validity. *Austin v. Loring*, 63 Mo. 19. For the most obvious reasons, then, the plaintiffs could not with one hand gather in the proceeds of the hops, in the assignee's court, and with the other hand take the hops or their proceeds in the circuit court.

Nanson v. Jacob.

V.   Something has been said about the defendant transfer company being a *connecting carrier*. I find no proof of this assertion in the record. The destination of the goods had been reached in East St. Louis, and the Wabash Railway had notified Jacob that they were *ready for delivery* upon payment of freight and charges, insisting on the immediate delivery of the goods, accompanied by a threat of increased charges for delay. In such circumstances, the transfer company was no more of a connecting carrier than would a drayman have been who was employed to cart the goods away, and upon the foregoing facts it may be fairly presumed that the Wabash Railway Company was the *terminal line*.

VI.   Our statute is express, that "every action shall be prosecuted in the name of the real party in interest," etc.   R. S., 1879, sec. 3462. The answer of the transfer company denied the assignment of the cause of action to plaintiffs, and that they were the real parties in interest, all of which were issuable allegations, and error was committed in excluding evidence offered in their support.   Other errors are assigned, but it is unnecessary to notice them.

Judgment of the St. Louis court of appeals, reversing that of the circuit court, is hereby affirmed. Norton, C. J., and Ray, J., concur. Black and Brace, JJ., on all points, except that they do not regard the allowance by the assignee as a judgment.