SOUTHWESTERN PORT HURON COMPANY, Appellant, v. COBBLE, Respondent.

**St. Louis Court of Appeals, April 30, 1907.**

**TROVER AND CONVERSION: Demand and Refusal: Assertion of Title.** A party in lawful possession of chattels belonging to another made an agreement to deliver them to the owner at a specified time; the owner could not maintain an action of conversion before the time delivery was to be made, where there had been no demand and refusal and where there was neither use nor assertion of title by the defendant.

Appeal from Cape Girardeau Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*W. H. Miller* for appellant.

*T. D. Hines* for respondent.

Trover will not lie against one who came into the possession of the property lawfully, until after demand and refusal. Yeager v. Wallace, 57 Pa. 368; Carey v. Bright, 58 Pa. 83; Waring v. Railroad, 76 Pa. 491; Taylor v. Hanlon, 103 Pa. 504; Boobier v. Boobier, 39 Me. 406; Kelsey v. Griswold, 6 Barb. 436; Hill on Torts, 582; 4 Ency. of Law, (1 Ed.), p. 115; Hays v. Ins. Co., 1 L. R. A. 305. Where goods have come lawfully into the defendant's possession, in the absence of an actual conversion, there must be a demand and a refusal before trover can be maintained. Jacoby v. Laussat, 6 Serg. &

R. 300; Storm v. Livingstone, 6 John. 44; Purveys v. Moltz, 5 Robt. 653; Dodge v. Johnson, 3 Thomp. & C. 237; Gillet v. Roberts, 57 N. Y. 28.

GOODE, J.—On June 3, 1903, the Port Huron Company sold and delivered to defendant a sixteen-horse-power traction engine, for $1,500. Defendant was to pay for it by executing three promissory notes for $225 each, falling due successively for three years, and turning over to the company two Harrison traction engines and one Advance separator. In order to distinguish the engine bought by defendant in the first place, from the two engines he was to deliver in part payment of it and another engine subsequently bought by him, we will designate the first one as No. 2176, which was in truth the number of it. This engine was in bad order when delivered to defendant and a dispute arose between him and the company from whom he had bought and was continued between him and the plaintiff company which, in August, 1903, succeeded to the rights of the Port Huron Company. Plaintiff's name, as will be observed, is the Southwestern Port Huron Company. The dispute was adjusted December 3, 1903, by a written contract reciting the facts of the sale of the engine No. 2176; that defendant was to pay $1,500 for it, partly in notes amounting to $675 and the balance in two Harrison traction engines and one Advance separator; that differences had arisen relative to the guaranty of engine No. 2176, the notes defendant gave and the further carrying out of the contract; that to settle differences between the parties, it was agreed plaintiff should take engine No. 2176 to Fruitland and have the same put in good repair by McNeely Bros., machinists of that place, within sixty days, and when so repaired and put in good order, should return the same to defendant at his mill in Cape Girardeau county; that when said engine No. 2176 was repaired it should be able to develop a horse power equal

to that of other engines of the same size; that defendant should have the right to try the same for one day to see if it would work to his satisfaction, or failing to do this, some disinterested party should be called in to test it; that defendant should pay his notes as they became due and on or before May 1, 1904, deliver free of charge at Fruitland, Missouri, the two Harrison engines and the Advance separator. It was further provided that the conditions of the contract to be performed by plaintiff should be precedent to the performance by defendant of what he undertook to do. The testimony goes to show that after engine No. 2176 had been repaired by McNeely Bros. it still failed to work well or give satisfaction to defendant, but instead of calling some third party to test it as had been agreed, the parties entered into another written arrangement as follows:

"May 10, 1904.

"When the Southwestern Port Huron Co. deliver to me at Jackson, Mo., by express or freight, prepaid, one intermediate gear, one front set of new grates, and one steering worm for my 16-horse power Port Huron engine, I will be perfectly satisfied with the above-mentioned engine and will pay my notes and deliver to McNeely Bros. at Fruitland, Mo., the two engines and separator given to the Port Huron, Co., as part payment for said Port Huron engine.

"G. W. COBBLE."

Cobble (defendant) did not, after the execution of the last agreement, deliver the Harrison engines and Advance separator at Fruitland, in part payment for engine No. 2176. He contended that said engine still failed to give satisfaction and that plaintiff had not carried out its contract regarding it. A third and verbal arrangement was made between plaintiff and defendant by which a new engine was sold to defendant for $1,750. The consideration for this engine, which we shall style

the New One was the return to plaintiff of engine No.
2176, payment of the notes originally given, and the
turning over to plaintiff of the Harrison engines and the
Advance separator. But defendant swears, that accord-
ing to the new arrangement, he was not to deliver the
latter machinery at Fruitland, until sometime in the
fall, instead of the spring of 1904, as originally pro-
vided. This verbal arrangement was made in the latter
part of May, or early in June, 1904; the evidence leaves
the date doubtful. Testimony for plaintiff tended to
show, perhaps, that plaintiff's agent demanded of de-
fendant, in May or June, the delivery of the two engines
and separator to McNeely Bros. at Fruitland, and a re-
fusal by defendant to deliver. The oral testimony for
plaintiff on this point is dubious, as tending to prove
an outright refusal, because, on cross-examination, the
witness said defendant, when demand was made that he
deliver the machinery at Fruitland, said he would not
do so *then*. Still the witness further said the impression
made on him was that defendant was denying plaintiff's
right to the machinery. Defendant himself swore to
the contrary; said he recognized the two traction en-
gines and separator were plaintiff's property, but did
not feel bound to deliver them to McNeely Bros. until
fall, and stated to plaintiff's agent that he would not
deliver them at the time requested, to-wit, in the spring
or early summer. The present action is in the nature
of trover for the conversion of the two Harrison engines,
the Advance separator and engine No. 2176, first sold to
defendant. As to this last engine plaintiff took a non-
suit, as the testimony showed it had been turned over
to plaintiff according to contract. Defendant interposed
a counterclaim for damages in the sum of $500 caused
by the failure of the first engine to come up to plain-
tiff's guarantee regarding it, and $60 by reason of the
failure of plaintiff or its predecessor, the Port Huron
Company, to pay freight charges against said machine

as agreed.  The court instructed against the recovery of any damages on the counterclaim and, of course, plaintiff has no cause to complain regarding that matter; though in other instructions the counterclaim was referred to; but in language precluding a recovery by defendant.  The essential question in the case, and, as far as we can glean from the record, the only one, was whether or not, after the verbal agreement was made for the sale of the new engine to defendant, he converted the two Harrison engines and the Advance separator to his own use by denying plaintiff's right to them or refusing to deliver them at Fruitland as he had bound himself to do.  According to the first written contract of settlement, defendant agreed to deliver said machinery to plaintiff at Fruitland, Missouri, free of charge "on or before May 1, 1904."  This agreement was superseded by the second agreement of May 10, 1904, by which defendant undertook to deliver the machinery to McNeely Bros. at Fruitland, without stating the date — whenever plaintiffs delivered to him at Jackson, freight prepaid, the articles mentioned in said writing of May 10, 1904, to-wit; an intermediate gear, set of new grates and a steering appliance.  It is not denied that both those written agreements were modified or set aside by the later verbal one for the sale of a new engine; but it appears to be plaintiff's contention that it became entitled to delivery by defendant to McNeely Bros. at Fruitland, of the Harrison engines and the separator at the time the New Engine was sold to defendant, and that by refusing to deliver said machinery at said time defendant became guilty of a conversion of it and answerable in damages for its value.  In the instructions for plaintiff the court did not confine plaintiff's right to recover to non-compliance by defendant with the last oral agreement, but allowed a recovery on contingencies growing out of the previous written agreements between the parties, which had been superseded or altered by the

oral agreement.   For the defendant the court instructed that to entitle plaintiff to a verdict the jury must find that some time before the bringing of the present action plaintiff, or its predecessor, had demanded possession of the chattels mentioned in the petition; that defendant was in possession of said chattels and refused to permit them to be taken by plaintiff.   Further, that the jury must find that some time prior to the institution of this action on August 6, 1904, defendant had converted the machinery sued for to his own use.   These two instructions will exemplify the theory on which the case was submitted at defendant's instance.   As defendant had possession of the Harrison engines and the Advance separator and had come lawfully into possession of them, we think some use of them by defendant, or a demand by plaintiff was essential to give cause for an action for their conversion.   Plaintiff does not assert, and did not prove, defendant made use of them while they were in his custody, but relies on a demand and refusal, to establish a conversion.   The evidence tending to support this theory of the case was weak, at best, while for the defendant the testimony was positive that he never refused to deliver the property or allow plaintiff to have it, but merely said he would not deliver it until, according to the contract, it was incumbent on him to do so. This issue was submitted to the jury and their finding settled it.

If the chattels were left in defendant's custody to be delivered to plaintiff's agent in the autumn and this cause was begun before the time of delivery had come, and meanwhile there had been neither use nor an assertion of title by defendant adverse to plaintiff's right, nor any demand by the latter, it is obvious that no conversion had occurred.   [Nansen v. Jacobs, 93 Mo. 331, 340, 6 S. W. 246.]   There was evidence to prove all those facts, as, possibly, there was some to prove a demand.

State ex rel. v. Dickman.

Plaintiff was given the full benefit of its evidence in the instructions and the judgment will be affirmed. All concur.